**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Sherry Fry, Brittini Barnes, Brittany Cabral, Tristan Fairbanks, Janet Ojo, Jessica Stewart, *on behalf of themselves and all others similarly situated,* | : <br> : <br> : <br> : <br> : |
| Plaintiffs, | : Civil Case Number: _____ <br> : |
| vs. | : **CLASS ACTION COMPLAINT** <br> : |
| American Honda Motor Co., Inc., | : <br> : |
| Defendant. | : <br> : |

Plaintiffs Sherry Fry, Brittini Barnes, Brittany Cabral, Tristan Fairbanks, Janet Ojo, and Jessica Stewart ("Plaintiffs"), hereby complain against Defendant American Honda Motor Co., Inc. ("Defendant" or "Honda").  Defendant made and/or sold vehicles with defective rear windshields. *E.g.* from the Barnes vehicle:



Plaintiffs seek relief for themselves and classes of similarly situated consumers as set forth herein.

## INTRODUCTION

1.      Plaintiffs bring this lawsuit on behalf of themselves and a proposed class of past and present owners and lessees of defective 2023 Honda HR-V vehicles (the "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Honda.

2.      Plaintiffs and the Class were damaged because the Class Vehicles contain defective rear windshields.

3.      The Class Vehicles contain one or more defects in the way the vehicles are manufactured and/or made that can cause the rear windshield to shatter (the "Rear Windshield Defect" or the "Defect").   Upon information and belief, the Rear Windshield Defect occurs due to either deficient materials used to make the rear windshield itself and/or a deficiency in the structure of the Class Vehicles.

4.      Class Vehicle owners report that their rear windshields shattered for no reason at all, often while vehicles were parked.

5.      Over one hundred drivers have now reported to the National Highway Traffic and Safety Administration ("NHTSA") and complained on various Internet venues that their rear windshield spontaneously shattered.

6.      The shattering is so powerful that startled drivers have compared it to the loud popping noise, followed by a rain of glass falling on the occupants of the vehicle, sometimes while driving at highway speeds.

7.      Honda, however, has refused to repair or replace the defective rear windshields in the Class Vehicle under Honda's warranty, requiring that Class Vehicle owners pay hundreds or thousands of dollars to repair the Defect.

8.    The Rear Windshield Defect poses an extreme safety hazard to drivers, passengers, and pedestrians because a spontaneously shattering rear windshield can impair and distract the driver, and results in dislodged glass that can injure drivers, passengers, and pedestrians.  Further, a vehicle with a shattered rear windshield is not safe to operate due to a risk of further damage from the environmental elements to the vehicle's interior, and is not safe to park in public spaces due to an increased risk of attracting theft or vandalism.

9.    Moreover, in the event a vehicle is involved in a collision, an intact rear windshield assists in transferring the force of an impact down to the vehicle's structure, which reduces the effect of the impact felt inside the vehicle and helps protect the passengers. However, where a vehicle's rear windshield is shattered, the vehicle occupants are at greater risk of sustaining injuries.

10.    In addition, the rear windshield is a vital component of a vehicle's safety restraint system, which also includes airbags and seatbelts.  These safety features, including the rear windshield, are all part of a safety network.  Each individual component of this network is dependent on the others functioning properly.  Thus, if there is a compromise or weakness in just one aspect of the network, the likelihood of other parts not working properly is increased.  All components of a vehicle's safety restraint system are designed to work together to keep vehicle occupants within the relative safety of the passenger compartment during collision or roll over.

11.    In addition to these safety issues, the cost to repair the Rear Windshield Defect can be exorbitant – often more than $1,000 for a replacement rear windshield – requiring consumers to pay significant sums over the life of their Class Vehicles.

12.    Had Plaintiffs and the Class Members known about the Rear Windshield Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

13.     Despite being notified of the Rear Windshield Defect from, among other things, pre-production testing, numerous consumer complaints (both to NHTSA and on HR-V-enthusiast websites and HR-V Facebook Groups), warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Rear Windshield Defect, has not issued bulletins to its dealerships acknowledging that the Class Vehicles suffer from the Rear Windshield Defect, has not offered its customers a suitable repair or non-defective replacement rear windshield free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Rear Windshield Defect.

14.     Honda knew of and concealed the Rear Windshield Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale and repair and thereafter.

15.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

16.     Plaintiffs have each given Honda a reasonable opportunity to cure the Rear Windshield Defect, but Honda has refused to cure the defect or otherwise has been unable to do so within a reasonable time.

17.     Honda's conduct is in violation of the Massachusetts Unfair Trade Practices Act, M.G.L. 93A § 2, and constitutes unjust enrichment, and a breach of express and implied warranties and the Magnuson-Moss Warranty Act.

18.     Honda has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at the point of sale as their vehicles continue to suffer from the unremedied Rear Windshield Defect.

19.     To remedy Honda's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages and restitution from Honda, as well as notification to class members about the defect.

## PARTIES

20.     Plaintiff Sherry Fry ("Plaintiff Fry" or "Ms. Fry") is an adult individual residing in Cheswick, Pennsylvania.

21.     Plaintiff Brittini Barnes ("Plaintiff Barnes" or "Ms. Barnes") is an adult individual residing in Hapeville, Georgia.

22.     Plaintiff Brittany Cabral ("Plaintiff Cabral" or "Ms. Cabral") is an adult individual residing in Los Angeles, California.

23.     Plaintiff Tristan Fairbanks ("Plaintiff Fairbanks" or "Ms. Fairbanks") is an adult individual residing in Napa, California.

24.     Plaintiff Janet Ojo ("Plaintiff Ojo" or "Ms. Ojo") is an adult individual residing in Braintree, Massachusetts.

25.     Plaintiff Jessica Stewart ("Plaintiff Stewart" or "Ms. Stewart") is an adult individual residing in Kingston, New York.

26.     Defendant American Honda Motor Co., Inc. ("Honda") is headquartered at 1919 Torrance Boulevard, Torrance, California 90501-2746. Honda is registered to do business in the Commonwealth of Pennsylvania and Honda' registered agent within the Commonwealth of

Pennsylvania is "Corporation Service Company" located 2595 Interstate Drive, #103, Harrisburg, Pennsylvania 17110.

27.     Honda distributes Honda vehicles in the United States and sells these vehicles through its network of dealers. Money received from the purchase of a Honda vehicle from a dealer flows from the dealer to Honda.

28.     At all times herein mentioned, Honda designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold the Class Vehicles, including the vehicles operated by Plaintiffs. Honda also reviews and analyzes warranty data submitted by Honda's dealerships and authorized technicians in order to identify defect trends in vehicles. Upon information and belief, Honda dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendant decides to audit the dealership. Honda uses this information to determine whether particular repairs are covered by an applicable Honda warranty or are indicative of a pervasive defect.

29.     Honda also developed the marketing materials to which Plaintiffs and the Class were exposed, owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Rear Windshield Defect.

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Class Members, and Defendant are citizens of different states.

31.     Personal jurisdiction and venue are proper in this District as Defendant is registered to do business in the Commonwealth of Pennsylvania, and Defendant has appointed a registered agent in the Commonwealth of Pennsylvania. Thus, pursuant to 42 Pa. Cons. Stat. Ann. § 5301, Defendant consented to a general jurisdiction within this District. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 143 S. Ct. 2028, 216 L. Ed. 2d 815 (2023).

## FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS

### I.    Sherry Fry

32.     In August of 2022, Ms. Fry leased a new 2023 Honda HR-V, Vehicle Identification Number 3CZRZ2H3XPM705669 (hereafter the "Fry Vehicle") from Baierl Honda in Wexford, Pennsylvania, an authorized Honda dealership (hereinafter "Baierl Honda").

33.     Passenger safety and reliability were important factors to Ms. Fry's decision to lease the vehicle. Prior to leasing the 2023 Honda HR-V, Ms. Fry researched the vehicle by asking a relative to look up for her the vehicle's specifications and features listed on Honda's website. Based on Honda's representations, Ms. Fry was led to believe that the 2023 Honda HR-V was, among other things, a safe, reliable, and high-quality vehicle.

34.     Prior to the lease, Baierl Honda assured Ms. Fry that the Fry Vehicle was accompanied by American Honda Motor Co., Inc.'s New Vehicle Limited Warranty.

35.     In its New Vehicle Limited Warranty, Honda promised to "repair or replace any part that is defective in material or workmanship under normal use" without charge within 3 years or 36,000 miles in service, whichever occurs first.

36.     Despite Ms. Fry's research prior to leasing the vehicle, neither Honda nor the selling dealership ever disclosed at the time of purchase that the 2023 Honda HR-V contained the Rear Windshield Defect.  Indeed, Honda concealed this information from consumers, and Ms. Fry was not aware of, and did not have any reason to anticipate, that her vehicle was afflicted by the Rear Windshield Defect when she leased the vehicle.

37.     Honda's omissions were material to Ms. Fry. If Honda had adequately disclosed these facts before Ms. Fry leased the vehicle, she would have learned of the concealed information and would not have leased the vehicle or would have paid less for it had she known the vehicle suffered from the Rear Windshield Defect.

38.     On September 12, 2023, when the Fry Vehicle odometer read about 9,000 miles, Plaintiff Fry experienced the Rear Windshield Defect.  As she got into her car and pressed a push-button engine start, she heard a loud unexpected popping sound.  Ms. Fry examined her car and discovered a large hole in the rear windshield. Leading up to the rear windshield shattering, there was no impact from any object, and Ms. Fry looked, but did not find any rock or brick that could have impacted the rear windshield.  Below is a photograph of the shattered rear windshield:



39.     Shortly thereafter, Ms. Fry called Baierl Honda, informed the dealership about the circumstances of the rear windshield shattering, and requested a warranty repair.  In response, the Baierl Honda declined to perform the repair under Honda's warranty and told Ms. Fry she needs to deal with her insurance company to get the rear windshield replaced.

40.     Ms. Fry then submitted a claim to her insurance company which then scheduled an appointment with Three Rivers Auto Glass, who in turn replaced the rear windshield in her vehicle with a new OEM Honda rear windshield; Ms. Fry's insurance company paid the cost of the rear windshield replacement in full.

41.     On October 2, 2023, Ms. Fry, through her counsel, sent a letter to Honda advising it that the Fry Vehicle suffered from the Rear Windshield Defect and that Ms. Fry was denied a replacement rear windshield under Honda's warranty.

42.     Nothing in the way Ms. Fry drove her vehicle has contributed or caused the rear windshield to shatter in her car, as at all times Ms. Fry has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## II.   Brittini Barnes

43.     In September of 2022, Ms. Barnes purchased a new 2023 Honda HR-V, Vehicle Identification Number 3CZRZ1H57PM708945 (hereafter the "Barnes Vehicle") from Curry Honda in Chamblee, Georgia, an authorized Honda dealership (hereinafter "Chamblee Honda").

44.     Passenger safety and reliability were important factors to Ms. Barnes' decision to purchase the vehicle. Prior to purchasing the 2023 Honda HR-V, Ms. Barnes researched the vehicle by looking at the vehicle's specifications and features listed on Honda's website and in Honda's online brochure, and on the 2023 Honda HR-V side window sticker. Based on Honda's representations, Ms. Barnes was led to believe that the 2023 Honda HR-V was, among other things, a safe, reliable, and high-quality vehicle.

45.     Prior to the purchase, Chamblee Honda assured Ms. Barnes that the Barnes Vehicle was accompanied by American Honda Motor Co., Inc.'s New Vehicle Limited Warranty.

46.     In its New Vehicle Limited Warranty, Honda promised to "repair or replace any part that is defective in material or workmanship under normal use" without charge within 3 years or 36,000 miles in service, whichever occurs first.

47.     Despite Ms. Barnes' research prior to purchasing the vehicle, neither Honda nor the selling dealership ever disclosed at the time of purchase that the 2023 Honda HR-V contained the Rear Windshield Defect.  Indeed, Honda concealed this information from consumers, and Ms. Barnes was not aware of, and did not have any reason to anticipate, that her vehicle was afflicted by the Rear Windshield Defect when she purchased the vehicle.

48.     Honda's omissions were material to Ms. Barnes. If Honda had adequately disclosed these facts before Ms. Barnes purchased the vehicle, she would have learned of the

concealed information and would not have bought the vehicle or would have paid less for it had she known the vehicle suffered from the Rear Windshield Defect.

49.      On June 26, 2023, when the Barnes Vehicle odometer read about 9,000 miles, Plaintiff Barnes experienced the Rear Windshield Defect.  Early in the morning, when Ms. Barnes sat inside her car while it was parked, the rear windshield shattered all of a sudden.  The unexpected loud popping sound frightened and startled Ms. Barnes.  Leading up to the rear windshield shattering, there was no impact from any object, and no one touched the Barnes Vehicle.  Below is a photograph of the shattered rear windshield:



50.      The same day, on June 26, 2023, Ms. Barnes sent a text correspondence to Chamblee Honda, informed the dealership about the circumstances of the rear windshield shattering, and arranged the Barnes Vehicle to be towed to Chamblee Honda that same day.

Once at Chamblee Honda, Ms. Barnes spoke to the dealership's service manager and said that she believed the shatter was the result of a defect with the rear windshield itself and requested a warranty repair.  In response, the Chamblee Honda's Service Manager declined to perform the repair under Honda's warranty and told Ms. Barnes to take her car to the dealership's collision center for the rear windshield replacement.

51.     On or about June 29, 2023, Chamblee Honda replaced the rear windshield in the Barnes Vehicle and charged Ms. Barnes $851.93 for the repair.  Out of concern that her insurance policy premium would increase, Ms. Barnes did not submit that bill to her insurance company and paid the bill in full herself.

52.     On July 7, 2023, Ms. Barnes, through her counsel, sent a letter to Honda advising it that the Barnes Vehicle suffered from the Rear Windshield Defect and that Ms. Barnes was denied a replacement rear windshield under Honda's warranty.

53.     Nothing in the way Ms. Barnes drove her vehicle has contributed or caused the rear windshield to shatter in her car, as at all times Ms. Barnes has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**III.    Brittany Cabral**

54.     On July 25, 2022, Ms. Cabral purchased a new 2023 Honda HR-V, Vehicle Identification Number 3CZRZ1H50PM702176 (hereafter the "Cabral Vehicle") from Airport Marina Honda in Los Angeles, California, an authorized Honda dealership (hereinafter "Airport Marina Honda").

55.     Passenger safety and reliability were important factors to Ms. Cabral's decision to purchase the vehicle. Prior to purchasing the 2023 Honda HR-V, Ms. Cabral researched the vehicle by looking at the vehicle's specifications and features listed on Honda's website and on

the 2023 Honda HR-V side window sticker. Based on Honda's representations, Ms. Cabral was led to believe that the 2023 Honda HR-V was, among other things, a safe, reliable, and high-quality vehicle.

56.     Prior to the purchase, Airport Marina Honda assured Ms. Cabral that the Cabral Vehicle was accompanied by American Honda Motor Co., Inc.'s New Vehicle Limited Warranty.

57.     In its New Vehicle Limited Warranty, Honda promised to "repair or replace any part that is defective in material or workmanship under normal use" without charge within 3 years or 36,000 miles in service, whichever occurs first.

58.     Despite Ms. Cabral's research prior to purchasing the vehicle, neither Honda nor the selling dealership ever disclosed at the time of purchase that the 2023 Honda HR-V contained the Rear Windshield Defect.  Indeed, Honda concealed this information from consumers, and Ms. Cabral was not aware of, and did not have any reason to anticipate, that her vehicle was afflicted by the Rear Windshield Defect when she purchased the vehicle.

59.     Honda's omissions were material to Ms. Cabral. If Honda had adequately disclosed these facts before Ms. Cabral purchased the vehicle, she would have learned of the concealed information and would not have bought the vehicle or would have paid less for it had she known the vehicle suffered from the Rear Windshield Defect.

60.     On July 8, 2023, when the Cabral Vehicle odometer read about 13,000 miles, Plaintiff Cabral experienced the Rear Windshield Defect.  Sometime around noon that day, the rear windshield shattered all of a sudden when the vehicle was parked under a shed.  Ms. Cabral looked if something possibly may have had hit her car, but she found no objects that might have impacted the rear windshield. Below is a photograph of the shattered rear windshield:



61.     The same day, on July 8, 2023, Ms. Cabral called Airport Marina Honda, informed the dealership about the circumstances of the rear windshield shattering and that she believed the shatter was the result of a defect with the rear windshield itself, and requested an appointment to perform a warranty repair.  In response, Airport Marina Honda told Ms. Cabral the rear window shattering was considered "wear-and-tear" and declined to perform the repair under Honda's warranty.

62.     Airport Marina Honda quoted Ms. Cabral about $1,000.00 to replace the rear windshield in her car.  Not willing to pay about $1,000.00 for a replacement rear windshield, Ms. Cabral instead had Safelite replace the rear windshield in her vehicle on July 11, 2023, for which she paid $552.02 out of pocket. Out of concern that her insurance policy premium would increase, Ms. Cabral did not submit that bill to her automobile insurance company.

63.     On July 19, 2023, Ms. Cabral, through her counsel, sent a letter to Honda advising it that the Cabral Vehicle suffered from the Rear Windshield Defect and that Ms. Cabral was denied a replacement rear windshield under Honda's warranty.

64.     Nothing in the way Ms. Cabral drove her vehicle has contributed or caused the rear windshield to shatter in her car, as at all times Ms. Cabral has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## IV.   Tristan Fairbanks

65.     On October 29, 2022, Ms. Fairbanks purchased a new 2023 Honda HR-V, Vehicle Identification Number 3CZRZ1H54PM708773 (hereafter the "Fairbanks Vehicle") from Kastner Honda in Napa, California, an authorized Honda dealership (hereinafter "Kastner Honda").

66.     Passenger safety and reliability were important factors to Ms. Fairbanks' decision to purchase the vehicle. Prior to purchasing the 2023 Honda HR-V, Ms. Fairbanks researched the vehicle by looking at the vehicle's specifications and features listed on Honda's website and on the 2023 Honda HR-V side window sticker. Based on Honda's representations, Ms. Fairbanks was led to believe that the 2023 Honda HR-V was, among other things, a safe, reliable, and high-quality vehicle.

67.     Prior to the purchase, Kastner Honda assured Ms. Fairbanks that the Fairbanks Vehicle was accompanied by American Honda Motor Co., Inc.'s New Vehicle Limited Warranty.

68.     In its New Vehicle Limited Warranty, Honda promised to "repair or replace any part that is defective in material or workmanship under normal use" without charge within 3 years or 36,000 miles in service, whichever occurs first.

69.     Despite Ms. Fairbanks' research prior to purchasing the vehicle, neither Honda nor the selling dealership ever disclosed at the time of purchase that the 2023 Honda HR-V contained the Rear Windshield Defect.  Indeed, Honda concealed this information from consumers, and Ms. Fairbanks was not aware of, and did not have any reason to anticipate, that her vehicle was afflicted by the Rear Windshield Defect when she purchased the vehicle.

70.     Honda's omissions were material to Ms. Fairbanks. If Honda had adequately disclosed these facts before Ms. Fairbanks purchased the vehicle, she would have learned of the concealed information and would not have bought the vehicle or would have paid less for it had she known the vehicle suffered from the Rear Windshield Defect.

71.     On June 30, 2023, when the Fairbanks Vehicle odometer read about 5,000 miles, Plaintiff Fairbanks experienced the Rear Windshield Defect.  Sometime around 5:00 p.m. that day, the rear windshield shattered all of a sudden when the vehicle was parked in a parking lot. Suspecting vandalism or a break-in attempt, Ms. Fairbanks called police. The police officer who arrived in response to Ms. Fairbanks' call carefully inspected the Fairbanks Vehicle and said he observed no sign of attempted break-in or vandalism and that the rear windshield likely shattered as a result of the defect with the rear windshield itself. Below is a photograph of the shattered rear windshield:



72.   The same day, on June 30, 2023, Ms. Fairbanks called Kastner Honda, informed the dealership about the circumstances of the rear windshield shattering and that she believes the shatter was the result of a defect with the rear windshield itself, and requested an appointment to perform a warranty repair.  In response, Kastner Honda declined to perform the repair under Honda's warranty.

73.   Ms. Fairbanks then scheduled an appointment with Safelite who replaced the rear windshield in her vehicle on July 12, 2023, for which Ms. Fairbanks paid $559.43 out of pocket.

74.   On July 19, 2023, Ms. Fairbanks, through her counsel, sent a letter to Honda advising it that the Fairbanks Vehicle suffered from the Rear Windshield Defect and that Ms. Fairbanks was denied a replacement rear windshield under Honda's warranty.

75.     Nothing in the way Ms. Fairbanks drove her vehicle has contributed or caused the rear windshield to shatter in her car, as at all times Ms. Fairbanks has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## V.     Janet Ojo

76.     In October of 2022, Ms. Ojo purchased a new 2023 Honda HR-V, Vehicle Identification Number 3CZRZ2H36PM713817 (hereafter the "Ojo Vehicle") from Ocean Honda of Weymouth in Weymouth, Massachusetts, an authorized Honda dealership (hereinafter, "Ocean Honda").

77.     Passenger safety and reliability were important factors to Ms. Ojo's decision to purchase the vehicle. Prior to purchasing the 2023 Honda HR-V, Ms. Ojo researched the vehicle by looking at the vehicle's specifications and features listed on the 2023 Honda HR-V side window sticker. Based on Honda's representations, Ms. Stewart was led to believe that the 2023 Honda HR-V was, among other things, a safe, reliable, and high-quality vehicle.

78.     Prior to the purchase, Ocean Honda assured Ms. Ojo that the Ojo Vehicle was accompanied by American Honda Motor Co., Inc.'s New Vehicle Limited Warranty.

79.     In its New Vehicle Limited Warranty, Honda promised to "repair or replace any part that is defective in material or workmanship under normal use" without charge within 3 years or 36,000 miles in service, whichever occurs first.

80.     Despite Ms. Ojo's research prior to purchasing the vehicle, neither Honda nor the selling dealership ever disclosed at the time of purchase that the 2023 Honda HR-V contained the Rear Windshield Defect.  Indeed, Honda concealed this information from consumers, and Ms. Ojo was not aware of, and did not have any reason to anticipate, that her vehicle was afflicted by the Rear Windshield Defect when she purchased the vehicle.

81.     Honda's omissions were material to Ms. Ojo. If Honda had adequately disclosed these facts before Ms. Ojo purchased the vehicle, she would have learned of the concealed information and would not have bought the vehicle or would have paid less for it had she known the vehicle suffered from the Rear Windshield Defect.

82.     In the morning of June 24, 2023, Plaintiff Ojo experienced the Rear Windshield Defect when the rear windshield shattered all of a sudden when Ms. Ojo put her vehicle in reverse and turned her head to see thought the rear windshield as she prepared to back out of the parking spot. It was at that moment that the rear windshield shattered and startled Ms. Ojo with its loud popping sound. Leading up to the rear windshield shattering, Ms. Ojo did not observe impact from any object, and no one touched the Ojo Vehicle.  Below is a photograph of the shattered rear windshield:



83.     The same day, on June 24, 2023, Ms. Ojo drove her car straight to Ocean Honda, informed the dealership about the circumstances of the rear windshield shatter, that she believed the shatter was the result of a defect with the rear windshield itself, and requested a warranty repair.  In response, the Ocean Honda said Ms. Ojo must submit a rear windshield repair request to her automobile insurance company and declined to perform the repair under Honda's warranty.

84.     After initially refusing to offer M.s Ojo any assistance with the shattered rear windshield, Ocean Honda eventually agreed to assist Ms. Ojo with putting a plastic wrap on the rear windshield so that Ms. Ojo could leave the dealership without risking water getting inside her car.

85.     On June 27, 2023, Master Glass replaced the rear windshield in the Ojo Vehicle and charged Ms. Ojo $1,068.01 for the repair; Ms. Ojo submitted the bill to her insurance company, which covered the bill in full.

86.     The experience of the rear windshield shattering without warning left Ms. Ojo apprehensive of carrying her children in the back seat of her car, especially her minor son who is autistic and very sensitive to unexpected loud noises.

87.     On July 20, 2023, Ms. Ojo, through her counsel, sent a letter to Honda advising it that the Ojo Vehicle suffered from the Rear Windshield Defect and that Ms. Ojo was denied a replacement rear windshield under Honda's warranty.

88.     Nothing in the way Ms. Ojo drove her vehicle has contributed or caused the rear windshield to shatter in her car, as at all times Ms. Ojo has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## VI.    Jessica Stewart

89.    In June of 2022, Ms. Stewart purchased a new 2023 Honda HR-V, Vehicle Identification Number 3CZRZ2H78PM700604 (hereafter the "Stewart Vehicle") from Friendly Honda in Poughkeepsie, New York, an authorized Honda dealership (hereinafter, "Friendly Honda").

90.    Passenger safety and reliability were important factors to Ms. Stewart's decision to purchase the vehicle. Prior to purchasing the 2023 Honda HR-V, Ms. Stewart researched the vehicle by looking at the vehicle's specifications and features listed on Honda's website. Based on Honda's representations, Ms. Stewart was led to believe that the 2023 Honda HR-V was, among other things, a safe, reliable, and high-quality vehicle.

91.    Prior to the purchase, Friendly Honda assured Ms. Stewart that the Stewart Vehicle was accompanied by American Honda Motor Co., Inc.'s New Vehicle Limited Warranty.

92.    In its New Vehicle Limited Warranty, Honda promised to "repair or replace any part that is defective in material or workmanship under normal use" without charge within 3 years or 36,000 miles in service, whichever occurs first.

93.    Despite Ms. Stewart's research prior to purchasing the vehicle, neither Honda nor the selling dealership ever disclosed at the time of purchase that the 2023 Honda HR-V contained the Rear Windshield Defect.  Indeed, Honda concealed this information from consumers, and Ms. Stewart was not aware of, and did not have any reason to anticipate, that her vehicle was afflicted by the Rear Windshield Defect when she purchased the vehicle.

94.    Honda's omissions were material to Ms. Stewart. If Honda had adequately disclosed these facts before Ms. Stewart purchased the vehicle, she would have learned of the

concealed information and would not have bought the vehicle or would have paid less for it had she known the vehicle suffered from the Rear Windshield Defect.

95.     On July 20, 2023, in the middle of the night, Plaintiff Stewart experienced the Rear Windshield Defect when the rear windshield shattered all of a sudden while Ms. Stewart was driving her car with her daughter in the vehicle.  Leading up to the rear windshield shattering, there was no impact from any object, and no one touched the Stewart Vehicle.

96.     The unexpected popping loud sound of the rear windshield shattering to pieces scared Ms. Stewart and her daughter and caused Ms. Stewart to draw her attention away from the road and to what was happening in the rear of the vehicle. Ms. Stewart then promptly pulled over onto the highway shoulder to inspect what happened.

97.     Then, on July 20, 2023, Ms. Stewart called Honda and complained that the rear windshield shattered in her vehicle. Honda responded Ms. Stewart should take her vehicle to a Honda dealership.

98.     The same day, Ms. Stewart called Friendly Honda to schedule a repair appointment, and brought her vehicle to Friendly Honda about a day or two later.

99.     Once at Friendly Honda, Ms. Stewart informed the dealership about the circumstances of the rear windshield shatter and that she believed the shatter was the result of a defect with the rear windshield itself.  In response, the Friendly Honda said Ms. Stewart must submit a rear windshield repair request to her automobile insurance company and declined to perform the repair under Honda's warranty.

100.    On July 31, 2023, Safelite replaced the rear windshield in the Stewart Vehicle and charged Ms. Stewart $1,080.59 for the repair; Ms. Stewart submitted the bill to her insurance company, which covered the bill in full.

101.     In between July 20, 2023, and July 31, 2023, Ms. Stewart drove her vehicle with a plastic shrink-wrap in the place of rear windshield, which made it impossible to observe traffic through a rear-view mirror.

102.     On August 2, 2023, Ms. Stewart, through her counsel, sent a letter to Honda advising it that the Stewart Vehicle suffered from the Rear Windshield Defect and that Ms. Stewart was denied a replacement rear windshield under Honda's warranty.

103.     Nothing in the way Ms. Stewart drove her vehicle has contributed or caused the rear windshield to shatter in her car, as at all times Ms. Stewart has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## FACTUAL ALLEGATIONS

### The Rear Windshield Defect

104.     In June 2022, Honda released the new generation of Honda HR-V, its compact-size crossover SUV, as a 2023 model year vehicle.

105.     Since then, it has sold tens of thousands of 2023 HR-V Class Vehicles across the United States.

106.     The Class Vehicles suffer from the Rear Windshield Defect.  Specifically, as a result of the way the vehicles are manufactured and/or made and Honda's use of deficient materials, the Class Vehicles' rear windshields were not sufficiently strong and durable for normal driving conditions and their intended use, and the windshields spontaneously shatter for no reason at all and/or under circumstances that would not cause non-defective rear windshields to similarly fail, such as when Class Vehicles' owners and lessees use the rear windshield defrost function.

107.     The Rear Windshield Defect presents a safety hazard that renders the Class

Vehicles unreasonably dangerous to consumers due to, *inter alia*, exposing driver and passenger to outside elements, as well as its impact on the Class Vehicles' structural integrity, potential for injury, and increased risk of vandalism and theft.

108.    Further, Honda refuses to repair or replace the Rear Windshield Defect under its written warranty when given a reasonable opportunity to do so.  Although on May 1, 2023, Honda issued its authorized dealers an internal memo announcing that Honda "is searching for certain 2023 HR-Vs with a customer complaint of rear windshield shattering" and "[t]o better understand the cause of this condition, [Honda] would like to collect specific parts from the vehicle prior to [dealers] attempting a repair of any kind," Honda has not issued any bulletins or instructions to its dealerships regarding the Class Vehicle's rear windshields' propensity to shatter or repairing the same, nor has Honda authorized its dealerships to cover Class Vehicle rear windshield repair or replacement costs under Honda's warranty.  In addition, Honda has refused to repair or replace the Plaintiffs' rear windshields under Honda's warranty.  Likewise, as detailed in the NHTSA and online complaints reproduced below, other Class Vehicle owners complain that Honda dealers charge them out-of-pocket for repairs.

109.    Honda had and has a duty to fully disclose the true nature of the Rear Windshield Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Honda had and has exclusive knowledge or access to material facts about the Class Vehicles' rear windshield that were and are not known to or reasonably discoverable by Plaintiffs and the other Class Members.  Because the rear windshield contained in each Class Vehicle is defective, each Class Vehicle rear windshield should be replaced by Honda free of charge regardless of whether the rear windshield has failed, or the facts and circumstances surrounding any failure.

**The NHTSA and Online Complaints of the Defect**

110.    Upon information and belief, thousands of purchasers and lessees of the Class Vehicles have experienced the Rear Windshield Defect.  Given how widespread the issue is, Class Vehicle owners have been complaining about the Rear Windshield Defect directly to Honda since early 2023 and have been posting such complaints online.[1]

111.    Moreover, complaints concerning the Rear Windshield Defect are the most common complaint topic amongst NHTSA complaints regarding the Class Vehicles.  The below example complaints concerning 2023 Honda HR-V vehicles, filed by consumers with the NHTSA and posted on the Internet, which on information and belief Honda actively monitored during the relevant time period, demonstrate that the Defect is widespread and dangerous, and that Honda has known about the defect at all relevant times.

- NHTSA Complaint No. 11510428, March 6, 2023 (Incident Date March 5, 2023): "My back window shattered while parked without any impact."

- NHTSA Complaint No. 11511728, March 14, 2023 (Incident Date February 26, 2023): "Back window shattered with no impact. Was told it is a flaw in the rear defrost."

- NHTSA Complaint No. 11512126, March 16, 2023 (Incident Date March 10, 2023): "My rear windshield popped/shattered as I was driving on a rural highway at roughly 60 mph. I did not go under an over pass and there were no other cars nearby. The window simply exploded seemingly spontaneously. I believe I had the rear window defroster going at the time or shortly before as it was a cold day. It has not been

---

[1] https://www.hrvforum.com/threads/2023-rear-windshield-shattering.44023/ (last visited September 29, 2023);
https://www.hrvforum.com/threads/back-windshield-shattered.44051/ (last visited September 29, 2023);
https://www.reddit.com/r/Honda/comments/11lx0n1/honda_hrv_defective_rear_window_shattering/ (last visited September 29, 2023);
https://www.reddit.com/r/HRV/comments/13a3jbw/rear_windshield_issues/ (last visited September 29, 2023);
https://www.facebook.com/groups/562821642528016/search/?q=rear%20windshield (last visited September 29, 2023).

inspected by Honda. There were no warning lamps or messages and there were no apparent issues with the rear window before it broke."

- NHTSA Complaint No. 11515546, April 5, 2023 (Incident Date April 3, 2023): "Vehicle was off and parked in a parking lot from 7:30AM-3:30PM on a partly sunny, calm, 50 degree day with the rear window facing southeast and parked a safe distance from the front bumper of the vehicle behind it. Upon return to the vehicle, the rear window had shattered into smithereens with a softball sized hole in the top left quadrant. After opening and closing the front passenger door, the entire rear window collapsed. There was no evidence of a strike from a person or a thing among the ruble."

- NHTSA Complaint No. 11516565, April 11, 2023 (Incident Date April 11, 2023): "My car was parking on normal rainy day and my back glass explode"

- NHTSA Complaint No. 11517459, April 17, 2023 (Incident Date April 17, 2023): "The contact owns a 2023 Honda HR-V. The contact stated while in stop and go traffic there was an abnormal explosion heard. The contact pulled over on the side of the road and noticed that the rear windshield had shattered without impact. The vehicle was taken to the dealer, but no assistance was provided. The manufacturer was contacted. The failure mileage was 4,600. The VIN was not available."

- NHTSA Complaint No. 11519550, April 29, 2023 (Incident Date April 27, 2023): "I was driving on the freeway and my rear window shattered. There was no potholes or cars next to me. I had turned off the rear defroster 2 miles before it shattered. Sometimes the driver side and passenger windows wont go all the way up. They stop and go back down."

- NHTSA Complaint No. 11520842, May 7, 2023 (Incident Date May 6, 2023): "The rear windshield shattered while my family and I were inside the vehicle. We were parked in a residential area when it happened."

- NHTSA Complaint No. 11523123, May 21, 2023 (Incident Date February 23, 2023): "My back window broke while i was parked outside my house sitting inside the vehicle with the A/C off. This made no sense whatsoever, yet my insurance didn't cover back glasses so i had to pay fully out of pocket for the glass from Honda & then had to find myself someone to install it because not even the Honda i purchased it from installed back glasses, only front ones, they said. I really hope they do look into this because it's really a shame all the struggle i had to go through for no reason, specially after the love i had for this vehicle."

- NHTSA Complaint No. 11523755, May 24, 2023 (Incident Date April 27, 2023): "While at a stoplight on a 45 degree morning with rear defroster on back window shattered outward with no warning or impact"

- NHTSA Complaint No. 11525365, June 5, 2023 (Incident Date June 2, 2023): "Exploding trunk glass windshield June 2, 2023. I had the rear window windshield or glass (at the trunk or above the license plate) of my 2023 Honda HRV EX-L shattering

and exploding yesterday while parked. There was no impact or an object hitting it. It just exploded. I strongly believe it's a manufacturing defect which needs a recall or warranty coverage. I believe an inferior glass was used. I had this car for a few months and less than a year. I called the collision center and they said they've had many incidents like that with that model. I'm really disappointed and considering many options right now. When I called Honda America, they were trying to bail out. But it's obvious that an inferior glass was used. Now, I don't know when the next glass is going to explode. And, I don't know when there'll be another defect. This needs a recall and must be covered by warranty or a buy back option. I lost my income for that day. I was lucky I didn't have anyone sitting at the backseat. There could've been physical injuries. Driving the car puts some fear in me psychologically because I don't when another glass will explode. And the dealership is also trying to bail out when this was bought brand new. It's frustrating. I'm gathering more information on how to proceed but I'd appreciate your input."

- NHTSA Complaint No. 11526396, June 10, 2023 (Incident Date June 9, 2023): "I was driving at night with my rear defogger on, then when I got home and the vehicle was parked, I heard the rear window shattering, nothing at all hit it, it was spontaneous, I looked online because I was confused and found that other 2023 Honda HR-V owners had this happen to them. I called my local dealership and they told me that this is a known issue by Honda but that they did not make an public announcement regarding this. If somebody had been in the rear seat, near the trunk, or actively unloading the trunk they could have been injured."

- NHTSA Complaint No. 11526354, June 10, 2023 (Incident Date June 7, 2023): "My back windshield exploded while sitting in my car. There was no impact to the window. It shattered from the inside out."

- NHTSA Complaint No. 11527153, June 15, 2023 (Incident Date June 15, 2023): "While driver 47 mph to work this morning my rear windshield suddenly popped and shattered. I was not under on over hangs or buildings. There were no others cars even around me at the time. I did have the rear defrost on. The whole windshield broke and fell apart."

- NHTSA Complaint No. 11527565, June 18, 2023 (Incident Date November 10, 2022): "Steering wheel gets loose and loud clonking noise from rear of vehicle, back window shattered while car was parked with no one around. Brakes have been grinding since day of purchase."

- NHTSA Complaint No. 11527827, June 20, 2023 (Incident Date June 17, 2023): "My 2023 Honda HRV was sitting in the parking lot of a restaurant when the back window exploded outward on 06/17/2023. No impact. Just exploded on its own. Overcast, cloudy, light on and off rain and roughly 60-65 degrees F outside … ."

- NHTSA Complaint No. 11528429, June 22, 2023 (Incident Date May 19, 2023): "I was driving and my back windshield exploded shattered evenly along the rubber seal

, also my steering is pulling me back into my lane , also wheel and break problems , car shut off while my dog was in it also at night I get bright head beam flicks"

- NHTSA Complaint No. 11528427, June 22, 2023 (Incident Date June 9, 2023): "The rear window of my 2023 Honda HRV blew out and hit me in the arm as I was walking around the rear of the vehicle. I was parked in an open parking lot with nothing around to strike the glass in any way. Both seals on either side of the window blew out as well. I immediately took it to my local Honda dealer and they informed me I was the 2nd HRV who had come in for a blown out rear window in just one week! It's a very new vehicle and no such recall exists yet but this is definitely a safety hazard!"

- NHTSA Complaint No. 11528808, June 26, 2023 (Incident Date June 23, 2023): "The contact owns a 2023 Honda HR-V. The contact stated that while driving approximately 55 MPH with the rear defroster activated, suddenly there was a loud banging sound heard. After stopping to inspect the vehicle, it was discovered that the rear liftgate glass had shattered. The vehicle was towed to the local dealer. The cause of the failure was not yet determined. The manufacturer was notified of the failure. The failure mileage was 5,000."

- NHTSA Complaint No. 11529340, June 28, 2023 (Incident Date June 28, 2023): "Rear windshield shattered while parked in my driveway nothing hit it because the alarm did not go off."

- NHTSA Complaint No. 11529565, June 29, 2023 (Incident Date June 29, 2023): "The contact owns a 2023 Honda HR-V. The contact stated while the vehicle was parked, the contact started the vehicle and turned on the defroster. The contact heard a loud boom and became aware that the rear windshield had shattered. No one was injured. The dealer was contacted and stated that they were aware of similar failures however, there was no recall associated with the failure. The contact was referred to the NHTSA Hotline for assistance. The vehicle was not diagnosed or repaired. The manufacturer was not contacted. The failure mileage was 13,000."

- NHTSA Complaint No. 11529960, July 2, 2023 (Incident Date July 2, 2023): "The rear window of our 2023 Honda HRV exploded with no incident whatsoever. We had parked the car on Sunday, July 2, 2023 and taken walk on beach at 7:30 in the morning. When we left at 8:15 we heard a noise from the back as we drove off and looked in rear view mirror to see that the back glass was shattering. Continued to shatter as we made our way back home - 1-1/2 miles. This is a Sunday and will consult with dealership on Monday."

- NHTSA Complaint No. 11530183, July 3, 2023 (Incident Date July 3, 2023): "The contact owns a 2023 Honda HR-V. The contact stated that while seated inside the vehicle with the engine running and the air conditioning turned on, the rear windshield shattered without impact. The local dealer was contacted, but the vehicle was not inspected, and the windshield was not replaced. The manufacturer was not contacted. The failure mileage was approximately 6,000. The VIN was not available."

- NHTSA Complaint No. 11530338, July 4, 2023 (Incident Date July 4, 2023): "Rear windshield shattered out of nowhere while driving. No rock or item of any kind was found inside the vehicle."

- NHTSA Complaint No. 11530322, July 4, 2023 (Incident Date July 4, 2023): "The rear window shattered after having the rear defrost on. I was driving down an empty street, so nothing could have hit it the window. Law enforcement even checked it out and we were all just as confused as to why it would just shatter.

- NHTSA Complaint No. 11530295, July 4, 2023 (Incident Date June 28, 2023): "The back windshield spontaneously exploded while driving on the highway. There was no accident or damage leading up to the explosion and the car is under a year old. Glass was found in second row seating as well as the trunk. If there was a passenger in the back seat, they would have been impaled with glass resulting in injury. I immediately contacted the dealership and was instructed to call my insurance. They did not give me the option to bring the vehicle in for service. My insurance company sent me to a glass repair shop to have manufacturer glass reinstalled but I am still waiting for the glass to be delivered to the shop as it is a week out upon ordering. There were no warning lamps or other symptoms of problems prior to the explosion of the glass."

- NHTSA Complaint No. 11530742, July 6, 2023 (Incident Date July 4, 2023): "Yesterday my rear windshield was shuttered spontaneously at 10:00 pm on the drive thru of burger restaurant. Cameras shows no vandalism or 3rd party was involved. The rear windshield shuttered with whole on the right up side suddenly after I had my defrost on to clear the rear windshield. Irresponsible Honda America agent over the phone hanged up on me and the dealership was laughing loud without any sympathy that me and my son were inside the car and we were terrifies."

- NHTSA Complaint No. 11531033, July 8, 2023 (Incident Date July 7, 2023): "The car was parked outside. Next thing I know I hear an explosion. I go out to see what it was and I found my rear window shattered. The window has been inspected and they won't cover it saying there has been no recall issued so nothing they can do."

- NHTSA Complaint No. 11532384, July 14, 2023 (Incident Date July 14, 2023): "Rear Windshield Shattered Unexpectedly."

- NHTSA Complaint No. 11532841, July 17, 2023 (Incident Date July 16, 2023): "I was driving my new HRV-EX-L 2023 model and due to some rain and heavy humidity my back windshield got foggy. I turned on the back windshield defogger and after about 10 minutes I heard a thug noise from the back. We turned around and the windshield was shattered. I am not so sure if that defogger device caused the shattering, but I am sure there is something faulty with the whole system. We inspected the whole vehicle and ascertained that nothing did hit or collided with our car. When we got home and we closed the front door the vibration made the whole back windshield collapsed in thousand of pieces. It could have been worse had it fall while driving on the road and considered that other cars were following behind and next to my vehicle. We contacted 2 large Southern Florida dealers that seem to be totally

29

unaware of this issue and utterly not co-operative for either inspection or manufacturer fault. We are so disappointed with Honda and their service and level of responsability in view of the many cases that are arousing around this issue."

- NHTSA Complaint No. 11533190, July 19, 2023 (Incident Date July 18, 2023): "While driving I put my rear defroster on and minutes later there was a loud pop noise and my entire rear window was shattered. I have an appt on Friday July 21, 2023 for the dealer to inspect it. Not having clear visibility while driving last night was a safety hazard. There was no warning at all."

- NHTSA Complaint No. 11533920, July 23, 2023 (Incident Date July 23, 2023): "Rear window on the trunk randomly shattered and cracked. My husband was driving home from work and heard a loud POP and the glass cracked. The smallest movements of the car is making it crack more. Can't get in touch with Honda because it is a Sunday. A headache!"

- NHTSA Complaint No. 11533883, July 23, 2023 (Incident Date July 2, 2023): "Rear window imploded while car was parked."

- NHTSA Complaint No. 11534432, July 25, 2023 (Incident Date July 25, 2023): "My rear glass shattered today unexpectedly with only 4,400 miles. Obviously others have same issue and defective glass or window frame. I'm getting fixed and Maroone Honda where I bought blew me off. Not happy."

- NHTSA Complaint No. 11534591, July 26, 2023 (Incident Date July 25, 2023): "Rear window made a loud pop and shattered while driving down the road. Nothing impacted it and it basically just exploded."

- NHTSA Complaint No. 11534759, July 27, 2023 (Incident Date July 26, 2023): "My wife was sitting in the car at the deli, and the rear glass exploded. She thought it was a gunshot. She ducked down and called 911."

- NHTSA Complaint No. 11535083, July 28, 2023 (Incident Date July 25, 2023): "I was driving my vehicle onto a off highway ramp with a speed of approximately 30 - 35 miles per hour, when we heard a loud pop sound. I immediately looked in the rear view mirror and there was an ~ 18" hole in the window. I pulled into a safe zone and looked at the rear hatchback window and it was shattered with the large hole. No reason, was not using wipers or defroster. Temperature was in the mid 70's. Luckily we were both in the front seats and no glass reached us."

- NHTSA Complaint No. 11535289, July 30, 2023 (Incident Date July 30, 2023): "I was parked in my car while talking to my friend and suddenly a loud smashing noise came from behind me. Then I heard a crackling sound and got out to look and my rear windshield had shattered. There was nothing around that made contact or caused it. The rear defrosters were on at the time of the incident."

- NHTSA Complaint No. 11535646, July 31, 2023 (Incident Date July 31, 2023): "I was driving home from work, heard a loud boom and then noticed my rear windshield had shattered and there was a big hole. This startled me and almost caused me a panic attack which could have led into an accident. This had happened while the rear defrosters were in use during light rain and 75 degrees weather at about 9:40 pm. I immediately inspected the damages and for a possible cause but did not find anything unusual. The damages can be described as a hole approximately 10in x 10in and the edges falling off. Black trash bag is currently covering the window until I can figure out what to do."

- NHTSA Complaint No. 11535562, July 31, 2023 (Incident Date July 28, 2023): "While in park at a drive thru we heard a loud bang. The rear windshield shattered. No foreign objects could be located and people around the vehicle did not witness anything hitting the car. Contents of the car were searched and no reason for the window to shatter was found."

- NHTSA Complaint No. 11535914, August 1, 2023 (Incident Date August 1, 2023): "While sitting at a stoplight, with no cars near me, I heard a shatter sound. My rear window glass has shattered for an unknown reason. I verified nothing had hit it. It was lightly raining, and I previously had the rear window defogger on."

- NHTSA Complaint No. 11535887, August 1, 2023 (Incident Date July 28, 2023): "Car was sitting under carport and the rear windshield exploded. Nothing hit it."

- NHTSA Complaint No. 11536378, August 3, 2023 (Incident Date February 4, 2023): "I was driving in the highway when the rear windshield pop out of nowhere completly shattered, there were no cars near by. Cant recall if the defroster was on but the weather was around 70 degrees."

- NHTSA Complaint No. 11536210, August 3, 2023 (Incident Date August 2, 2023): "Remote started car and back windshield exploded loud pop window completely shattered."

- NHTSA Complaint No. 11536424, August 3, 2023 (Incident Date August 3, 2023): "The back hatch glass busted when I was parked and no one around it blew so hard it blew the molding out from the window."

- NHTSA Complaint No. 11536706, August 5, 2023 (Incident Date August 5, 2023): "I was driving in the highway when out of nowhere the rear windshield just completely shatters. It was a rainy day and the rear window was foggy so I used the defroster and while it worked not sure what caused this issue."

- NHTSA Complaint No. 11536681, August 5, 2023 (Incident Date August 2, 2023): "I'm driving at First Colonial Rd almost 3 mins. to work when suddenly I've heard an strange loud explosion at the rear or back windshield and nobody hit me without a any hole but it's a cracked that looks like a frosted window during winter. I was shocked to see how it shattered into pieces when I stopped and parked. This is only 1 year

Honda HRV 2023 the reason I bought is for safety purposes on the road but it looks like there's manufacturer defects because I wasn't hit by any car when it exploded. How can we guarantee our safety if even a new model car is not safe to use and Honda dealership is giving us a hard time with this kind of incident? I bring my car in Honda Hall they only put a temporary plastic cover. Í called Honda Battlefield and told me to they will only put a temporary plastic same in Honda Hall which there's no safety if it will accidentally removed will cause more trouble on the road due crumble glass or shattered glass. I noticed Honda Battlefield staff and the manager I spoke with last night offer me a trade in for my vehicle instead of hearing about what happened. They treated us with a very warming attitude upon closing the sales but after sales they avoiding us and not giving us the good service. If my grandchild child is with me that time when it exploded seated at the back it will cause more pain on our end. I hope to be heard with this complaint that Honda Battlefield need to be responsible and take in charge for this incident of manufacturers defect or recall for their customers safety. The price of this honda hrv is not a joke and it's frustrating that nobody wants to accommodate and give me the same quality customer service like when I buy my car. I hope this incident will be given ân appropriate action since the dealership is giving me a hard time with this issue."

- NHTSA Complaint No. 11536781, August 6, 2023 (Incident Date August 5, 2023): "Rear window exploded while parked."

- NHTSA Complaint No. 11536775, August 6, 2023 (Incident Date July 24, 2023): "07/24/2023 @ 5:35AM, I arrived at work and parked my car in front of the building. A co-worker came to my desk at 11:45am and asked me what happened to my car. The rear windshield had shattered and there was a hole in the left side of the window. I called Walnut Creek Honda and was informed that they would have to order the glass and could not confirm the ETA for that to arrive. It would not be covered via warranty or under the additional roadside advantage policy that I purchased. They said they would call me back with the ETA - they did not return my call. In the meantime I called my insurance company and they referred me to All State Glass for an onsite repair. They confirmed on 07/25/2023 the Honda glass had arrived and repaired the window. When the technician was installing the new glass he was shocked by the rear window defroster wire and advised that he could leave it disconnected until I could have the car inspected by the dealer. I took the car to Walnut Creek Honda on 8/8/2023 and charged for the diagnostics that indicated there was not a malfunction of that part. There is some discussion on the Web that multiple have had this problem with their 2023 Honda HRV's but Honda does not have a recall for this problem. I called them on 7/28/2023 and opened a case (#14400775). There is a concern that this can happen to my vehicle again and it does not make me feel very safe."

- NHTSA Complaint No. 11537003, August 7, 2023 (Incident Date August 5, 2023): "I was driving at night and my rear windshield shattered out of nowhere. I had two passengers in the back seat, and the glass went everywhere. There was no foreign object or extreme temperature that would have caused this."

- NHTSA Complaint No. 11536973, August 7, 2023 (Incident Date August 5, 2023): "Saturday August 5, 2023 my car was parked in public business lot from 12:40pm to 4:30pm. When I got to my car I noticed the whole back windshield was shattered. I called the dealership they ran my VIN# no recalls listed. Not sure if my car was vandalized or not. I looked online and there were pictures and reports of this happening to other people with the same car, make, model within the last 60 days of my incident."

- NHTSA Complaint No. 11537628, August 10, 2023 (Incident Date August 4, 2023): "The contact owns a 2023 Honda HR-V. The contact stated while the vehicle was parked, the contact heard an abnormally loud sound and became aware that the rear windshield had shattered without impact. The contact stated that the defroster was turned on before the failure. The vehicle was taken to the dealer and the rear windshield was covered. The vehicle was repaired. The manufacturer was not contacted. The failure mileage was 12,000."

- NHTSA Complaint No. 11538100, August 12, 2023 (Incident Date August 12, 2023): "Drove the car this morning at 540am. Came back to my house and went out to leave a few hours later. Got into the car and the back windshield just imploded and shattered into pieces and left a huge hold in the left side. Contacted the dealership, they stated that they have had other people with the same issue but no actual recall on this so I would need to fix it."

- NHTSA Complaint No. 11538476, August 14, 2023 (Incident Date August 10, 2023): "During early morning commute travelling at 45 mph, a pop was heard from behind. Rear window glass completely shattered into pieces. There was no sign of impact from the road, nor the interior of the cabin. Glass debris found on road and in rear compartment (trunk). Prior to incident, a noticeable rattle in glass could be heard under normal driving conditions. At 6,010 miles, the rattle was reported to dealership and diagnosed as being caused by Tailgate Trim. Tailgate Trim was ordered and replaced. The same rattle persisted after dealership remedy. Exact same rattle could be heard, no change in symptom. Vehicle driven to 21,961 miles before incident. Currently, glass shards prevent the tailgate from unlatching. Latch motor blocked by debris and rear compartment is inaccessible. Debris litter the inner cavity of the tailgate door panel. Minor paint scratches present from falling debris."

- NHTSA Complaint No. 11538471, August 14, 2023 (Incident Date August 13, 2023): "My rear windshield shattered spontaneously while driving on the freeway. No impact caused this event."

- NHTSA Complaint No. 11538634, August 15, 2023 (Incident Date August 15, 2023): "While we were driving home from the beach on a very calm sunny day we kept smelling this weird smell in the car. While stopped at a red light we heard a loud pop and the rear window just exploded."

- NHTSA Complaint No. 11539104, August 17, 2023 (Incident Date August 17, 2023): "Unknown, was driving to work and the rear window exploded. Nothing hit it, the

defogger was on when I left the house to work. Weather probably was in the low 70s at max. Road was St route 13, a paved well-kept road."

- NHTSA Complaint No. 11539414, August 18, 2023 (Incident Date August 18, 2023): "Back glass exploded."

- NHTSA Complaint No. 11539481, August 18, 2023 (Incident Date August 18, 2023): "Rear window shattered spontaneously while fully stoped at the traffic light."

- NHTSA Complaint No. 11539301, August 18, 2023 (Incident Date August 16, 2023): "Sitting at a traffic light with defroster on and rear window shattered."

- NHTSA Complaint No. 11539280, August 18, 2023 (Incident Date August 17, 2023): "Yesterday 8/17 I was getting into my vehicle to leave work. I got into my HR-V and shut the drivers door, all of a sudden I hear a loud bang. The tailgate glass shattered all over the place. It seems as this is a common occurrence on these vehicle as I found multiple incidents of this occurring and complaints. This is not safe and vehicle is not safe to drive with this happening."

- NHTSA Complaint No. 11539602, August 19, 2023 (Incident Date August 16, 2023): "I used my rear defogger for a few minutes prior to driving. The defogger wasn't needed for the drive, I turned it off after 5 minutes of usage. After 40 minutes of driving, I smelled a faint burning smell. I arrived home at 7:59p and at 8:16 I heard a loud pop. My neighbor rang my doorbell and told me something had happened to my window. My rear window had a gaping hole in the upper left area. The glass broke from the inside out not from something being thrown at it. I have photos and video documentation. Fortunately, my dealer is working with me on getting it fixed under warranty....but clearly, there is a problem."

- NHTSA Complaint No. 11539784, August 21, 2023 (Incident Date August 18, 2023): "I was sitting at a red light and my rear windshield exploded out of nowhere, nothing hitting it. I now see there are over 50 complaints of the same thing happening to HRVs. We've had the car less than a year. This is so, so dangerous, specifically because kids sit in the back seat. I really hope Honda does an investigation / recall. This is so scary and dangerous. Imagine if the front windshield shattered instead on someone driving... My dealer won't cover the cost, even though we are in warranty, and denies it is a problem with the glass when it clearly is. I am talking to the national Honda people now."

- NHTSA Complaint No. 11540197, August 22, 2023 (Incident Date August 22, 2023): "As I was driving my daughter to school my back windshield blew out. Nothing hit the windshield it blew out at the seams. It was a loud explosion that startled us both and had I been on the highway (which I was headed to) it could have caused us to crash."

- NHTSA Complaint No. 11540431, August 23, 2023 (Incident Date August 21, 2023): "The back windshield of my 2023 Honda HRV popped and shattered out of nowhere."

- NHTSA Complaint No. 11540403, August 23, 2023 (Incident Date August 21, 2023): "On 8/21/23 I was driving my hrv on a ramp from i695 to i97 near Baltimore MD. Weather was humid.i has rear defroster running to clear the back window. Speed was only about 25mph . Suddenly heard a crashing sound. Looked in rear view mirror and the back hatch window was 100 pct shattered but still in place. Pulled over to the shoulder on i97 Found no evidence of external damage.had thought part of the underpass fell on it.called Safelite glass and they applied a crash wrap so we could return home to south Carolina. Safelite set up appointment for today. 8/23/23 for replacement under my car insurance .progressive Work completed today. But I feel Honda should reimburse progressivec insurance as check on Google indicates this is a defect of some sort with 2023 Honda hrv vehicles. Feel this is definite safety hazard."

- NHTSA Complaint No. 11540224, August 23, 2023 (Incident Date August 22, 2023): "Structure of rear windshield failed catastrophically during commute to work. I used the rear defroster this morning for about 10 minutes. As I continued to drive to work my rear windshield spontaneously shattered. I need to have the entire rear windshield replaced."

- NHTSA Complaint No. 11540659, August 24, 2023 (Incident Date August 24, 2023): "I was sitting in a fast food drive through and my rear window just shattered for no reason. Nothing hit the window, to make it shatter."

- NHTSA Complaint No. 11540533, August 24, 2023 (Incident Date August 22, 2023): "My rear windshield shattered out of nowhere. My son was in the backseat when it happened. I called the police and they are also confused on how my window shattered, it doesn't show any puncture or impact of any kind just a shattered window. No warning lights came on before or after. I took my baby to the dealer and they also did not see what could have caused it to shatter. Believe it may be an manufacturing defect."

- NHTSA Complaint No. 11540875, August 26, 2023 (Incident Date August 26, 2023): "My rear windshield basically exploded, for lack of a better word, last night! It was very scary and confusing. I was alone on the road. There were no cars around me. The glass immediately started to shattered. You could hear the crackling and a hole formed on the left hand side (drivers side) first. The entire windshield panel was destroyed. The black trimming included, that goes right up against the car. I need you to understand how terrifying this was! My 8 year old was shaking and crying in the back seat especially with the sound of the crackling. Before the hole formed it sounded like it was under intense pressure and was going to pop. I was shaking because I thought maybe someone hit my car with something they threw or god forbid something worse. Understand, I was driving with my son and it was 12:30am, so I pulled over to look around and was nervous someone was there and was going to do something. It wasn't until I got home and really looked at the windshield that it made sense that I wasn't hit by anything. I then googled to see if this was a problem and sure enough it is! My brother in law met me at my home to help remove the glass and cover the opening. We had to remove it, it was slowly crumbling everywhere."

- NHTSA Complaint No. 11541233, August 28, 2023 (Incident Date August 10, 2023): "The contact owns a 2023 Honda HR-V. The contact stated while driving 20 MPH, the rear window suddenly shattered. There was no impact to the window to cause the window to be shattered. The vehicle was not taken to the dealer or an independent mechanic. The vehicle was not repaired. The manufacturer was not notified of the failure. The failure mileage was 20,000."

- NHTSA Complaint No. 11541566, August 29, 2023 (Incident Date August 29, 2023): "I got in my car this morning and and noticed immediately the rear windshield look like there was ice / frozen over since there was condensation on my other windows. I started my car and turned on the defroster button for my front and rear windshield. 10 minutes into driving, I heard a pop sound and noticed a hole in the rear windshield wiper. I thought it was a bag of chips in my trunk so I continued to driving to my destination, not really thinking much about it. At this time both the defrosters were turned off. When I got to my destination I noticed the hole/ opening in the rear windshield got bigger and upon inspection, 35% of my window fell into my trunk and shattered."

- NHTSA Complaint No. 11541323, August 29, 2023 (Incident Date August 28, 2023): "Driving about 20 mph. Rear windshield defrost was on and out of nowhere the rear windshield shattered. Very scary."

- NHTSA Complaint No. 11541651, August 30, 2023 (Incident Date August 30, 2023): "Back windshield randomly exploded, nothing was thrown at the vehicle, car was parked and not running when the incident happened. Glass appears to be blown out from the inside."

- NHTSA Complaint No. 11542025, September 1, 2023 (Incident Date September 1, 2023): "The contact owns a 2023 Honda HR-V. The contact stated while driving 60 MPH, the rear windshield shattered without impact. The dealer was not contacted. A police report was filed. The vehicle was repaired. The manufacturer was not contacted. The failure mileage was 10,000."

- NHTSA Complaint No. 11542307, September 2, 2023 (Incident Date September 2, 2023): "My rear windshield shattered out of nowhere. Not driving, car wasn't turned on yet, temperature outside was about 60 degrees so wasn't too cold or too hot. No impact."

- NHTSA Complaint No. 11542703, September 5, 2023 (Incident Date September 5, 2023): "My vehicle was parked when the rear windshield shattered. Nothing came into contact. Dealerships are refusing to help out and they are aware of the issue. Please help us get this covered under a recall."

- NHTSA Complaint No. 11543074, September 7, 2023 (Incident Date August 22, 2023): "My rear windshield shattered while vehicle was sitting a parking lot. I have a camera system installed and footage showed the glass shattering with no impact from any outside source. I took the vehicle to my local dealer, and they ordered new rear

glass, and are going to take care of the repair no charge. It's been a couple of weeks, and I am waiting on glass to arrive. Honda should recall, as this has the potential to be a dangerous situation for anyone that may be sitting in the rear seat, particularly a young child, or infant."

- NHTSA Complaint No. 11543450, September 8, 2023 (Incident Date September 6, 2023): "The contact owns a 2023 Honda HR-V. The contact stated that while the vehicle was parked, the contact became aware that the rear windshield had shattered. The contact checked the security cameras to see what happened and confirmed that the rear windshield had shattered independently. The vehicle had not been diagnosed by the dealer. The vehicle was pending the repair at the dealer. The manufacturer was not made aware of the failure. The failure mileage was approximately 10,000."

- NHTSA Complaint No. 11543639, September 9, 2023 (Incident Date September 8, 2023): "While driving last night, I heard a loud bang and then what sounded like ice melting. Nothing hit the car just the loud sound. I noticed I couldn't see out the back window so when I got out, I ran to the back of the car. The entire back window had shattered. I hit absolutely nothing, no rock or debris hit it, nothing at all. I had the rear and front defrost on for about 5 minutes before turning off the rear and keeping just the front on. It was nighttime, drizzling, and about 67 degrees. I called the dealership that I leased it from first thing this morning and the two people I spoke to were flabbergasted. I let them know to Google as it appears to have been happening and continue to happen to this exact year and make of this car. I'm waiting to hear back on how to move forward but no repairs or anything have been done. I filed an insurance claim and am also waiting to hear back for that."

- NHTSA Complaint No. 11543633, September 9, 2023 (Incident Date September 9, 2023): "I was driving into my driveway and parked and before I exited the car the rear tailgate window exploded. It was so loud that my neighbor ran out of his house because he heard the noise. Several others have reported this happening to them on the internet. There should be a recall."

- NHTSA Complaint No. 11543646, September 10, 2023 (Incident Date September 9, 2023): "Back windshield shattered while parked."

- NHTSA Complaint No. 11543945, September 11, 2023 (Incident Date September 11, 2023): "The contact owns 2023 Honda HR-V. The contact stated that while driving approximately 30 MPH in the rain, she heard an abnormal loud popping sound and noticed that the driver's side rear windshield had exploded, and the entire windshield was shattered. The contact was able to drive to the nearby residence. The dealer was notified of the failure. The vehicle was not diagnosed nor repaired. The manufacturer was not notified of the failure. The failure mileage was approximately 8,200."

- NHTSA Complaint No. 11543857, September 11, 2023 (Incident Date August 2, 2023): "Rear view window spontaneously shattered while driving on the highway. Sending window shards into the inside of the vehicle. Vehicle was NOT in a collision, and no foreign objects were found in the vehicle and no exterior damage showed

outside the vehicle to suggest damage caused by an object. CHP responded to the scene and stated this was odd because there was no impact points or foreign objects in the car that would cause such damage. I took the vehicle to a Honda service center after noticing other people online had similar issues, and that Honda was replacing some windows for some of those people. But I did not have luck with getting them to replace the window. So I had to lay out of pocket for the repair today."

- NHTSA Complaint No. 11543803, September 11, 2023 (Incident Date September 10, 2023): "My Honda HR-V was sitting in the parking lot when the back window just exploded by its own. There was no impact, no object hitting at all. Went to the dealer and they couldn't do nothing. Call the Honda service and they told me to call the insurance. I bought this car less than a year I'm really disappointed with Honda assistance."

- NHTSA Complaint No. 11544149, September 12, 2023 (Incident Date September 10, 2023): "I have a leased 2023 Honda HRV Sport from Tarrytown Honda in Tarrytown, NY with less than 6,500 miles. On Sunday, 9/10/23, my rear windshield completely shattered while I was driving for no apparent reason (photos available). There were no warning messages or other symptoms prior to the problem. There was no impact from another vehicle or object. It had been lightly raining, and my rear windshield wiper was on. This happened in a dangerous and busy location, 1.5 miles before the George Washington Bridge. I was driving from Westchester County, NY to Teaneck, NJ. I was merging from one busy NY Interstate (87-S) to another (95-S). I was driving by myself and not in a familiar area. I was able to pull into a triangle not intended for driving. However, someone could have easily rear ended me when I abruptly stopped upon seeing the damage. I could not drive the vehicle at first because I could not see out of the rear window. Over time, while waiting for the car to be towed, the read windshield began to crumble into the back cargo area of the car. After the car was towed, the majority of the window had crumbled into the back cargo area leaving a gigantic hole. My car is currently at Tarrytown Honda and has been inspected by both a sales manager and a service technician. I have 2 years remaining on my lease and I am under the Honda 3-year/36K-mile Warranty. I expected Honda to cover all costs, as this is clearly a manufacturer defect. However, my dealership service technician informed me that glass coverage is excluded from Honda's warranty program. A claim has been filed with my auto insurance company, Geico. My policy includes complete glass coverage and car rental coverage for up to 30 days. Geico arranged for Safelite to replace my rear windshield at Tarrytown Honda, where my car is currently being stored in a garage. I imagine my vehicle is available for inspection prior to the service appointment with Safelite on 9/19/23."

- NHTSA Complaint No. 11544058, September 12, 2023 (Incident Date September 12, 2023): "The back rear view windshield, exploded while driving under 20 mph. Window was not hit by any object. There is a forum online where many others describe the same exact situation. Car was inspected by dealership but they are unaware of this problem occurring. Could have been extremely dangerous if someone was sitting in the back seat. There was no warning or signs it just shattered as if it exploded."

- NHTSA Complaint No. 11544011, September 12, 2023 (Incident Date September 12, 2023): "I was in the drive thru of Burger King and the clerk was handing me my debit card when the rear windshield imploded. I filed a police report and the officer is going to pull the drive thru video to confirm that nothing was thrown or fell onto the windshield. I don't think anything fell or was thrown at the windshield...it just spontaneously imploded. It was sprinkling outside, and I had the rear defroster on. I think maybe the rear defroster got too hot and caused the window to implode. I ended up being late for work because of this."

- NHTSA Complaint No. 11543997, September 12, 2023 (Incident Date September 11, 2023): "The rear windshield completely shattered. Vehicle was parked in parking lot with others coming and going in soccer complex for no more than an hour. No item or fragment could've hit it. Sat in car about to leave parking lot and heard a bang from back turned around to see glass shattered. But no one or no item near it. It was a 65 degree and rainy day. The glass on right side seemed warped. Honda mentions there is no recalls for the car. However there are various complaints online of people with similar experience occurring with 2023 HRV. Seems glass could be faulty."

- NHTSA Complaint No. 11543991, September 12, 2023 (Incident Date September 11, 2023): "Rear window shattered while my vehicle was parked at work between 5am and 2pm. It was lightly raining throughout the day, temperature was low to mid 60's. I used defrost at about 4:45 am prior to driving to work. Don't recall if I used defrost when leaving work at 2pm, but as I pulled from my parking spot I heard a noise that seemed like something was falling into the back of my truck, when I stopped to look I saw a big hole in my rear window."

- NHTSA Complaint No. 11544334, September 13, 2023 (Incident Date September 13, 2023): "I used my rear defroster this morning for about 10 minutes on my way to work. A few hours later I went to get in my car and when I closed the door, the rear window exploded. It was about 70 degrees, clear and sunny. The car was just sitting in a parking lot. Security footage was reviewed and no one even walked past it while it was parked."

- NHTSA Complaint No. 11544266, September 13, 2023 (Incident Date September 12, 2023): "I turned on rear window defroster. I drove to the doctors. I came out 30 minutes later. Pushed ignition button and the rear window in the hatch shattered."

- NHTSA Complaint No. 11544502, September 14, 2023 (Incident Date September 14, 2023): "Was driving my 2023 Honda HRV to work going 35 mph (the posted speed limit) when I heard a loud bang and my back windshield basically exploded. Glass everywhere in my trunk."

- NHTSA Complaint No. 11544466, September 14, 2023 (Incident Date September 14, 2023): "Rear window exploded/ shattered. This occurred on a rainy/foggy morning when I had the rear defrost on. Drove the car about 25 mins with the defrost on, parked the car, turned it off, and exited the driver poor. Upon shutting the driver door, the rear windshield blew out a hole. Upon taking it to a Honda dealership, the service manager

informed me that he has seen the issue on another 23 Sport as well. There were no indications that the back windshield was failing before it happened. I have owned this car for a year and used the rear defrost all last winter with no issues."

- NHTSA Complaint No. 11544853, September 15, 2023 (Incident Date September 15, 2023): "My rear window shattered and exploded while parked."

- NHTSA Complaint No. 11544795, September 15, 2023 (Incident Date September 8, 2023): "Rear windshield completely shattered parked in an employee only area. No objects inside the car to have caused damage."

- NHTSA Complaint No. 11544739, September 15, 2023 (Incident Date September 14, 2023): "Rear window shattered while vehicle was parked."

- NHTSA Complaint No. 11544926, September 16, 2023 (Incident Date September 4, 2023): "I parked my car around 1pm at work as I do every day. Large busy parking lot in a Publix shopping plaza, very safe, lots of people coming and going from retail shops, restaurants, etc. Approx 4pm realized I left one of my office keys in my console. Opened driver door and leaned in to grab key, out of the corner of my eye I saw the back windshield & thought it looked dirty & weird. Did a double take & it looked like ice when it breaks & starts to melt. I walked around to the back and saw a hole in my back windshield & the entire thing was shattered in little pieces. I thought someone punched a hole in it. Then I walked back around to shut my driver door and when I did, all the shattered glass fell into the back. The perimeter of the windshield was still attached but the glass pieces were pushed outward like there had been an explosion inside my car. Google search showed this is happening with 2023 HR-Vs all over the country. I took photos (VERY IMPORTANT - take pix right away. ALSO IMPORTANT - don't touch the glass or fix it until Honda inspects it). I had to work & couldn't deal with it until a few days later, so I taped a trash bag over the windshield as best I could without touching the rest of the glass. It continued to break apart as I drove, but the sides stayed attached. Called my Honda dealer 3 days later. Spoke to a sales manager. He said to text him the photos, I also sent screenshots of google search results & NHTSA complaints. He called back & said to bring it in to service department. They inspected it when I pulled in. Within 20 mins they had called corporate, ordered the parts, & said they would repair on site within a week. Meanwhile they had pulled a rental car around for me. I signed a quick paper & was out the door. Zero cost to me. They were wonderful. Be polite, be patient, be truthful, and you will most often get the help you need from any business. I am a Honda customer for life!!!"

- NHTSA Complaint No. 11544871, September 16, 2023 (Incident Date September 11, 2023): "On September 11th I was driving from my home to work. I heard a popping sound and when I look through the rear mirror I saw a hole in my rear windshield. For no reason the rear windshield shattered and broken completely while i was driving. I always take local route to avoid highway block. Went to two dealership they told company has no warranty on rear windshield repair."

- NHTSA Complaint No. 11544986, September 17, 2023 (Incident Date February 12, 2023): "Rear back windshield shattered out of nowhere in pieces, no impact at all 5 months after purchase. I went to the dealership Honda Ontario because I had warranty but they would not help or even report the situation."

- NHTSA Complaint No. 11545166, September 18, 2023 (Incident Date September 17, 2023): "2023 Honda HRV, rear window shattered over night completely ruining the window, reports online of owners having the same problem. Only thing I can think of is I had defrosted the windows the night of the incident on my way home, came out in the morning to see the rear window completely shattered with no evidence of a person or object causing damage. Repairs estimated at roughly $800. Called and reported the incident to multiple Honda dealerships in Massachusetts."

- NHTSA Complaint No. 11545159, September 18, 2023 (Incident Date September 17, 2023): "Rear windshield spontaneously shattered while parked in driveway."

- NHTSA Complaint No. 11545101, September 18, 2023 (Incident Date September 18, 2023): "I was driving this morning and my back glass just shattered this morning shortly after I turned on the rear wipers due to it raining."

- NHTSA Complaint No. 11545092, September 18, 2023 (Incident Date September 16, 2023): "I used Rear fog when I was driving and then parked the car in my garage. Later in the evening when I went to take my car I saw that the rear windshield is broken."

- NHTSA Complaint No. 11545523, September 19, 2023 (Incident Date September 11, 2023): "I was driving and I heard a large noise and saw that my rear glass shattered/broke unexpectedly. Did not hit anything, just broke on its own. Now have a large hole in the glass."

- NHTSA Complaint No. 11545495, September 19, 2023 (Incident Date September 6, 2023): "On September 6, 2023, the back windshield of my 2023 Honda HRV shattered while I was driving putting my safety at risk for the loud sound of the glass while concentrating on the road. Called the Honda dealership and explained the incident. The service manager was familiar with this happening on other vehicles and confirmed it would be covered by Honda to replace and correct without any cost to me. I dropped the vehicle off that day and they emailed the Honda warranty group by email and got it approved. The service rep took photos of the back windshield and all the shattered glass to submit. The rep stated that the seals around the back windshield is defective and needs to be ordered and replaced. The seal is on back order with an estimated arrival date of September 23, 2023 to the dealership. Once parts are in, then the dealership will have to arrange an appointment with Safelight to install the new windshield."

- NHTSA Complaint No. 11545431, September 19, 2023 (Incident Date September 17, 2023): "The contact owns a 2023 Honda HR-V. The contact stated that after remote starting the vehicle, he walked out to the vehicle and heard a popping sound. The

contact approached the vehicle and became aware that there was a hole in the center of the windshield and that had spider webbed. The rear windshield was still in place however, the contact was unable to through the rear windshield while using the rear-view mirror. The contact had taken the vehicle to a local dealer, where pictures were taken, and the incident was documented. The vehicle had not been repaired. The manufacturer had been informed of the failure. The failure mileage was approximately 30,800."

- NHTSA Complaint No. 11545359, September 19, 2023 (Incident Date September 18, 2023): "Rear Windshield shattered while it was parked."

- NHTSA Complaint No. 11545743, September 20, 2023 (Incident Date September 19, 2023): "As I was driving at 645 in the morning, my rear glass shattered from the inside. There was no accident and nothing hit my car."

- NHTSA Complaint No. 11545594, September 20, 2023 (Incident Date September 19, 2023): "I had my car parked at my place of work and the rear windsheld exploded and shattered by itself. The car was not vandalized, touched by an object/being, or had an attempt break in. This all happened after use of the rear windshield defrost component. Luckily I was not driving or in the car when this happened. I brought the car to my nearest dealership and informed them on what happened. The vehicle was inspected by the dealership and also, the police. All confirmed that it was not done by an object/being. There were no warnings or messages that were brought to my attention about this happening or could happen. Now it has to get replaced!"

- NHTSA Complaint No. 11545557, September 20, 2023 (Incident Date September 19, 2023): "While driving on a highway, the back windshield spontaneously combusted. It was extremely loud and startling and nearly caused an accident."

- NHTSA Complaint No. 11545921, September 21, 2023 (Incident Date September 19, 2023): "While car was parked unattended, rear hatch window shattered. Just parked car after using rear defroster, came out an hour later and it was all splintered. It appeared the glass was bubbled out from the inside on the drivers side middle but yet still intact. Nothing in the trunk, checked all the cameras and nobody was near it. I cleaned up the mess before driving it to the dealer and the dealership intake guy said "I've seen this before". It is now at the dealer waiting to hear what is going to be done."

- NHTSA Complaint No. 11545913, September 21, 2023 (Incident Date September 21, 2023): "Sitting at a light and back windshield shattered. Nothing hit it. It completely shattered for no known reason. It is a brand new 2023 HRV."

- NHTSA Complaint No. 11546113, September 22, 2023 (Incident Date September 22, 2023): "The back window blew out. I had the rear defrost on while I was driving home. When I got home, I backed into the driveway up to the garage. I went in to change, and we left a few minutes later. When we got into the car and closed the doors, we heard a loud sound from the back. We looked back and the window was shattered. There was nothing around that could have hit the window. No sign of anything that

could have flown into the window, especially since it was backed up to the closed garage door. It seems to be some sort of factory defect in the window itself. I'm grateful we were parked and not driving down the road when it happened."

- NHTSA Complaint No. 11546012, September 20, 2023 (Incident Date September 19, 2023): "While driving to school, sitting in traffic, I head a loud noise, looked in my rear view mirror and saw my entire rear window was shattered. Nothing was thrown through the window, there was no collision. The vehicle was taken to a local Honda dealership for a full diagnosis of the problem. Because the glass is tempered, and no one was in the back seat - there wasn't an immediate safety issue to persons within the car. However, it isn't safe to drive the vehicle with no rear window. I filed a claim with Honda America as I've read on a forum others have experienced the same issue. The window is on back order through Honda and not covered under warranty. We've owned the vehicle for approximately 1 year and it has 6200 miles."

- NHTSA Complaint No. 11545999, September 22, 2023 (Incident Date September 12, 2023): "I was driving and my back windshield exploded."

- NHTSA Complaint No. 11545951, September 22, 2023 (Incident Date September 21, 2023): "My wife parked at a local restaurant this morning, and prior to entering the lot, she reported no issues. My wife advised that upon exiting the vehicle, her back window began shattering from the bottom left corner which continued upwards toward the roof of the car. Nobody was around to strike it, nor has the vehicle been involved in any accidents to cause an integrity failure."

- NHTSA Complaint No. 11546260, September 24, 2023 (Incident Date September 24, 2023): "Rear windshield exploded and shattered into pieces mostly on the middle part of the windshield."

- NHTSA Complaint No. 11546456, September 25, 2023 (Incident Date September 25, 2023): "I used the rear defroster while driving, and the rear windshield glass just completely shattered when I parked. Nothing hit it. There was light rain."

- NHTSA Complaint No. 11546421, September 25, 2023 (Incident Date September 21, 2023): "I was driving down the highway on 9/21/23. I had my rear defrost on and it was about 50 degrees outside. My back windshield had no cracks in it. Nothing hit the back windshield. I suddenly heard a loud popping noise and my entire back windshield shattered. There was glass falling into my trunk. Luckily my infant daughter was not in the car in her rear facing carseat. Honda would not replace the rear windshield under the manufacturers warranty. My insurance covered the replacement of the windshield."

- NHTSA Complaint No. 11546708, September 26, 2023 (Incident Date September 25, 2023): "About 10 minutes after turning on the rear defroster the back window spontaneously shattered."

- NHTSA Complaint No. 11546701, September 26, 2023 (Incident Date September 26, 2023): "Car was parked in a parking lot. Nothing hit it, it wasn't on and the rear window shattered completely."

- NHTSA Complaint No. 11546593, September 26, 2023 (Incident Date September 6, 2023): "On September 6, 2023 at approximately 7:00AM was standing beside my vehicle pumping gas when I heard a loud noise. My daughter, who was in the car, turned around to look at me and asked me if my car was OK. Then she told me to look at my rear window. When I looked at the window it had "exploded". There was a large hole in the left, center area of the window with the rest of the window shattered, but intact. The car was off, it was on the cooler side with temperatures in the upper 50s' to low 60's. The rear defroster had been on previously on the drive, but the car was off at the time of the incident."

- NHTSA Complaint No. 11546551, September 26, 2023 (Incident Date September 26, 2023): "I had the rear window windshield or glass (at the trunk or above the license plate) of my 2023 Honda HRV SPORT shattering and exploding today while I stopped at a stop sign. There was no impact or an object hitting it. It just exploded. I strongly believe it's a manufacturing defect which needs a recall or warranty coverage. I believe an inferior glass was used. I had this car for a few months and less than a year. I had a newborn in the back seat in her car seat as soon as this happened. Doesn't make me feel safe."

- NHTSA Complaint No. 11547007, September 27, 2023 (Incident Date September 27, 2023): "I left work at about 430 p.m. and at just that time, it started to rain and then some torrential rain. Because of the heavy rain, I did use my rear defroster, the rear wiper, front wiper and front defroster. My drive as far as distance is about 18 miles, but because of the weather, traffic was slow. Then the rain stopped so I did not need to use the rear wiper. About 1-1/2 miles from my exit I heard a pop, pulled over to the shoulder of the road and saw that the back window on the left side had a hole and the rest of the glass was shattered. As time went by, as I was slowly driving home (the rest of the drive is about 5 miles), more and more of the glass was falling in. Now most of the glass is missing."

- NHTSA Complaint No. 11546984, September 27, 2023 (Incident Date September 25, 2023): "I came back to my car from class and my entire back windshield was shattered. There were cameras and nothing made impact with my car, it just happened by itself."

- NHTSA Complaint No. 11546905, September 27, 2023 (Incident Date September 27, 2023): "Rear windshield shattered without impact from rock or other foreign object. Car was parked in a lot for 1 hour in the shade after driving for 20 minutes. Rear defroster was used 3.5 hours before incident for approximately 10 minutes. Glass shattered inside trunk and onto pavement of parking lot, which is used by a daycare for children ages 0-7; daycare providers were extremely concerned for children's safety following incident. No warning messages or symptoms were seen prior to incident. Vehicle to be brought to dealer for inspection; initial call to dealer was unsuccessful in acquiring answers regarding the problem. Problem has been reported

multiple times on hrvforum.com over the last few months, with varying responses from dealers."

- NHTSA Complaint No. 11546829, September 27, 2023 (Incident Date September 25, 2023): "I'm one of the many individuals who experienced the rear windshield imploding or shattering. Its been a few days, so far Honda and Los Angeles(downtown) Honda have not been helpful."

112.    Although Honda was aware of the widespread nature of the Rear Windshield Defect in the Class Vehicles, and that it posed grave safety risks, Honda has failed to take adequate steps to notify all Class Vehicle owners of the Defect and provide relief.

113.    Customers have reported the Rear Windshield Defect in the Class Vehicles to Honda directly and through its dealers.  Defendant is fully aware of the Rear Windshield Defect contained in the Class Vehicles.  Moreover, Defendant had the ability to notify Class Vehicle owners about the Rear Windshield Defect directly and via its authorized dealerships at the time of sale and thereafter. Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Specifically, Defendant:

   a.   failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Rear Windshield Defect;

   b.   failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their rear windshield were not in good working order, were defective, and were not fit for their intended purpose; and,

   c.   failed to disclose and/or actively concealed the fact that the Class Vehicles and their rear windshields were defective, despite the fact that Defendant learned of the Rear Windshield Defect as early as 2023.

114.    Defendant has deprived Class Members of the benefit of their bargain, exposed

them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Rear Windshield Defect contained in the Class Vehicles.

115.    Defendant has not recalled the Class Vehicles to repair the Rear Windshield Defect, has not issued any bulletins or instructions to its dealerships regarding the Rear Windshield Defect, has not offered to its customers a suitable repair or replacement of parts related to the Rear Windshield Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Rear Windshield Defect.

116.    Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

117.    As a result of the Rear Windshield Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's rear windshield is not defective and will not shatter for no reason at all or under circumstances that would not cause non-defective rear windshields to similarly fail.  Plaintiffs and Class Members further expect and assume that Honda will not sell or lease vehicles with known safety defects, such as the Rear Windshield Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair.  They do not expect that Honda would fail to disclose the Rear Windshield Defect to them, and then refuse to remedy the defect under Honda's warranty.

## CLASS ACTION ALLEGATIONS

### A.  The Classes

118.    Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:** All persons or entities in the United States who are current or former

owners and/or lessees of a Class Vehicle.

119.     In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P.

23(c)(5), Plaintiffs seek to represent the following state-specific classes:

**California Class:** All persons or entities who purchased or leased any 2023 Honda HR-V vehicle in the State of California (the "California Class").

**Georgia Class:** All persons or entities who purchased or leased any 2023 Honda HR-V vehicle in the State of Georgia (the "Georgia Class").

**Massachusetts Class:** All persons or entities who purchased or leased any 2023 Honda HR-V vehicle in the State of Massachusetts (the "Massachusetts Class").

**New York Class:** All persons or entities who purchased or leased any 2023 Honda HR-V vehicle in the State of New York (the "New York Class").

**Pennsylvania Class:** All persons or entities who purchased or leased any 2023 Honda HR-V vehicle in the State of Pennsylvania (the "Pennsylvania Class").

120.     Defendant and its employees or agents are excluded from the Class.

**B.   Numerosity**

121.     Upon information and belief, the Classes are each so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased nationwide and throughout California, Georgia, Massachusetts New York, and Pennsylvania.

**C.   Common Questions of Law and Fact**

122.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

a.       whether the Class Vehicles suffer from the Rear Windshield Defect;

b.       whether the Rear Windshield Defect constitutes an unreasonable safety hazard;

c.      whether Defendant knows about the Rear Windshield Defect and, if so, how long Defendant has known of the Defect;

d.      whether the defective nature of the Class Vehicles' rear windshield constitutes a material defect;

e.      whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' rear windshield to Plaintiffs and the other Class Members;

f.      whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.      whether Defendant knew or reasonably should have known of the Rear Windshield Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

h.      Whether Defendant breached its express warranty and the implied warranty of merchantability, engaged in unjust enrichment, and whether Defendant violated the Unfair Trade Practices Act, M.G.L. 93A § 2, and the Magnuson-Moss Warranty Act, as alleged in this Complaint.

### D.   Typicality

123.    The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased or leased defective Class Vehicles, as did each member of the Classes.  Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

### E.   Protecting the Interests of the Class Members

124.    Plaintiffs will fairly and adequately protect the interests of the Class and have

retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiffs nor their counsel has any interest which might cause them not to vigorously pursue this action.

**F.   Proceeding Via Class Action is Superior and Advisable**

125.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

126.    Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

**FIRST CAUSE OF ACTION**
**Breach of Implied and Express Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***
**(Plaintiffs on behalf of the Nationwide Class or in the alternative the California, Georgia, Massachusetts, New York and Pennsylvania Classes)**

127.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint

as though fully stated herein.

128.    Plaintiffs are each a "consumer" as defined in 15 U.S.C. § 2301(3).

129.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

130.    Plaintiffs' vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6).  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

131.    15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the Plaintiffs' vehicles within a reasonable time and without charge to the Plaintiffs.

132.    The Defendant's sale of the defective Plaintiffs' vehicles and its failure and/or refusal to repair the Plaintiffs' vehicles' Rear Windshield Defect within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Plaintiffs' vehicles.

133.    Despite repeated demands, Defendant has failed to remedy the Plaintiffs' vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Plaintiffs' vehicles.

134.    As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs have suffered damaged.

## SECOND CAUSE OF ACTION
### Unjust Enrichment
**(Plaintiffs on behalf of the Nationwide Class or in the alternative the California, Georgia, Massachusetts, New York and Pennsylvania Classes)**

135.    Plaintiffs incorporate by reference all allegations contained in this Complaint as

though fully stated herein.

136.    Honda has long known that about the Rear Windshield Defect which it concealed and failed to disclose to Plaintiffs and Class Members.

137.    As a result of its fraudulent acts and omissions related to the Rear Windshield Defect, Honda obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

138.    Honda appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Rear Windshield Defect, paid a higher price for their vehicles which actually had lower values.  Honda also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

139.    It would be inequitable and unjust for Honda to retain these wrongfully obtained profits.

140.    Honda's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

141.    As a result of Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

142.    Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

143.    Additionally, Plaintiffs seek injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiffs also seek injunctive relief enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to

Class Vehicles, enjoining Defendant from selling the Class Vehicles with the misleading

information; compelling Defendant to provide Class members with a replacement components

that do not contain the defects alleged herein; and/or compelling Defendant to reform its

warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to

notify all Class Members that such warranty has been reformed. Money damages are not an

adequate remedy for the above requested non-monetary injunctive relief.

**THIRD CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability pursuant to Song-Beverly**
**Consumer Warranty Act – Cal. Civ. Code §§ 1792 and 1791.1,** *et seq.*
**(Plaintiffs Cabral and Fairbanks on behalf of the California Class)**

144.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint

as though fully stated herein.

145.    Defendant is a merchant with respect to motor vehicles.

146.    The Class Vehicles were subject to implied warranties of merchantability running

from the Defendant to Plaintiffs Cabral and Fairbanks and the California Class Members.

147.    An implied warranty that the Class Vehicles were merchantable arose by

operation of law as part of the sale or lease of the Class Vehicles.

148.    Defendant breached the implied warranty of merchantability in that the Class

Vehicles suffer from the above-described Rear Windshield Defect and thus were not in

merchantable condition when Plaintiffs Cabral and Fairbanks and the California Class Members

purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the

ordinary purposes for which such vehicles are used.

149.    Defendant has breached the implied warranty of merchantability because the

Class Vehicles when sold or leased would not pass without objection in the trade.

150.     As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

151.     Additionally, as a result of the Rear Windshield Defect, Plaintiffs Cabral and Fairbanks and the California Class Members were harmed and suffered actual damages.

152.     Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty pursuant to Cal. Comm. Code § 2313**
**(Plaintiffs Cabral and Fairbanks on behalf of the California Class)**

153.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

154.     In connection with the sale or lease of the Class Vehicles to Plaintiffs Cabral and Fairbanks and the California Class Members, Defendant provided Plaintiffs Cabral and Fairbanks, and the California Class Members, with a New Vehicle Limited Warranty, under which it agreed to repair or replace original components found to be defective in material or workmanship within the first 36 months or 36,000 miles in service, whichever comes first.

155.     Plaintiffs Cabral and Fairbanks and the California Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

156.     Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the rear windshields, which substantially impair the Class Vehicles' use, safety, and value to Plaintiffs Cabral and Fairbanks and the California Class

Members, but Defendant has failed to cover the costs of repairing or replacing the defective rear windshields under its warranty.

157.    Specifically, as a result of a defect in the manufacturing process and/or the use of defective materials, each of the California Class Vehicles came off the assembly line in substandard condition and was manufactured in such a way that their rear windshields do not function or perform as designed and result in the Rear Windshield Defect, and the Class Vehicles differ from the vehicles that Defendant intended to sell.

158.    Plaintiffs Cabral and Fairbanks and the California Class Members have given Defendant reasonable opportunities to cure said defects under Honda's warranty, but Defendant has failed or refused to repair or replace the defective rear windshields under Defendant's New Vehicle Limited Warranty.

159.    As a result of said nonconformities, Plaintiffs Cabral and Fairbanks and the California Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

160.    Plaintiffs Cabral and Fairbanks and the California Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to their acceptance of the Class Vehicles.

161.    Plaintiffs Cabral and Fairbanks and the California Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the rear windshields did not function as advertised and warranted, and that necessary repairs to cover the defective rear windshields would not be covered under Defendant's warranty.

162.     As a result of Defendant's breach of express warranties, Plaintiffs Cabral and Fairbanks and the California Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Plaintiffs Cabral and Fairbanks and the California Class Members actually received.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty pursuant to Song-Beverly**
**Consumer Warranty Act – Cal. Civ. Code §§ 1793 and 1791.2, *et seq.***
**(Plaintiffs Cabral and Fairbanks on behalf of the California Class)**

163.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

164.     Plaintiffs Cabral and Fairbanks and the California Class Members are each a "buyer" as defined in Cal. Civ. Code § 1791(b).

165.     Defendant is a "manufacturer" as defined in Cal. Civ. Code § 1791(j).

166.     The Class Vehicles are each a "consumer good" as defined in Cal. Civ. Code § 1791(a).

167.     Cal. Civ. Code § 1794 provides a cause of action for any consumer who is damaged by the failure of a manufacturer to comply with an express warranty.

168.     In connection with the sale or lease of the Class Vehicles to Plaintiffs Cabral and Fairbanks and the California Class Members, Defendant provided Plaintiffs Cabral and Fairbanks and the California Class Members with express warranties within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

169.     Specifically, in connection with the sale or lease of the Class Vehicles to Plaintiffs Cabral and Fairbanks and the California Class Members, Defendant provided Plaintiffs Cabral and Fairbanks and the California Class Members with a New Vehicle Limited Warranty, under

55

which it agreed to repair or replace original components found to be defective in material or workmanship within the first 36 months or 36,000 miles in service, whichever comes first.

170.    Plaintiffs Cabral and Fairbanks and the California Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

171.    Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the rear windshields, which substantially impair the Class Vehicles' use, safety, and value to Plaintiffs Cabral and Fairbanks and the California Class Members.

172.    Plaintiffs Cabral and Fairbanks and the California Class Members have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

173.    As a result of said nonconformities, Plaintiffs Cabral and Fairbanks and the California Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

174.    Plaintiffs Cabral and Fairbanks and the California Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiffs Cabral and Fairbanks and the California Class Members' acceptance of the Class Vehicles.

175.    Plaintiffs Cabral and Fairbanks and the California Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the rear windshields did not function as advertised and warranted.

176.    As a result of Defendant's breach of express warranties, Plaintiffs Cabral and

Fairbanks and the California Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Plaintiffs Cabral and Fairbanks and the California Class Members actually received.

<u>SIXTH CAUSE OF ACTION</u>
**Breach of Implied Warranty of Merchantability**
**pursuant to Ga. Code Ann. § 11-2-314**
**(Plaintiff Barnes on behalf of the Georgia Class)**

177.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

178.    Defendant is a merchant with respect to motor vehicles.

179.    The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Barnes and the Georgia Class Members.

180.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

181.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Rear Windshield Defect and thus were not in merchantable condition when Plaintiff Barnes and the Georgia Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

182.    Defendant has breached the implied warranty of merchantability because the Class Vehicles when sold or leased would not pass without objection in the trade.

183.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

184.     Additionally, as a result of the Rear Windshield Defect, Plaintiff Barnes and the Georgia Class Members were harmed and suffered actual damages.

185.     Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Ga. Code Ann. § 11-2-314.

**SEVENTH CAUSE OF ACTION**
**Breach of Express Warranty pursuant to Ga. Code Ann. § 11-2-313**
**(Plaintiff Barnes on behalf of the Georgia Class)**

186.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

187.     In connection with the sale or lease of the Class Vehicles to Plaintiff Barnes and the Georgia Class Members, Defendant provided Plaintiff Barnes and the Georgia Class Members with express warranties within the meaning of Ga. Code Ann. § 11-2-313.

188.     Specifically, in connection with the sale or lease of the Class Vehicles to Plaintiff Barnes and the Georgia Class Members, Defendant provided Plaintiff Barnes and the Georgia Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace original components found to be defective in material or workmanship within the first 36 months or 36,000 miles in service, whichever comes first.

189.     Plaintiff Barnes and the Georgia Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

190.     Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the rear windshields, which substantially impair the Class Vehicles' use, safety, and value to Plaintiff Barnes and the Georgia Class Members.

191.     Plaintiff Barnes and the Georgia Class Members have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

192.     As a result of said nonconformities, Plaintiff Barnes and the Georgia Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

193.     Plaintiff Barnes and the Georgia Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Barnes and the Georgia Class Members' acceptance of the Class Vehicles.

194.     Plaintiff Barnes and the Georgia Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the rear windshields did not function as advertised and warranted.

195.     As a result of Defendant's breach of express warranties, Plaintiff Barnes and the Georgia Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Plaintiff Barnes and the Georgia Class Members actually received.

**EIGHTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**pursuant to M.G.L. 106 § 2A-314**
**(Plaintiff Ojo on behalf of the Massachusetts Class)**

196.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

197.     Defendant is a merchant with respect to motor vehicles.

198.     The Class Vehicles were subject to implied warranties of merchantability running

from the Defendant to Plaintiff Ojo and the Massachusetts Class Members.

199.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

200.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the above-described Rear Windshield Defect and thus were not in merchantable condition when Plaintiff Ojo and the Massachusetts Class Members purchased or leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

201.    Defendant has breached the implied warranty of merchantability because the Class Vehicles when sold or leased would not pass without objection in the trade.

202.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

203.    Additionally, as a result of the Rear Windshield Defect, Plaintiff Ojo and the Massachusetts Class Members were harmed and suffered actual damages.

204.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of M.G.L. 106 § 2A-314.

## NINTH CAUSE OF ACTION
### Breach of Express Warranty pursuant to M.G.L. 106 § 2A-314
### (Plaintiff Ojo on behalf of the Massachusetts Class)

205.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

206.    In connection with the sale or lease of the Class Vehicles to Plaintiff Ojo and the

Massachusetts Class Members, Defendant provided Plaintiff Ojo and the Massachusetts Class Members with express warranties within the meaning of M.G.L. 106 § 2A-314.

207.    Specifically, in connection with the sale or lease of the Class Vehicles to Plaintiff Ojo and the Massachusetts Class Members, Defendant provided Plaintiff Ojo and the Massachusetts Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace original components found to be defective in material or workmanship within the first 36 months or 36,000 miles in service, whichever comes first.

208.    Plaintiff Ojo and the Massachusetts Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

209.    Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the rear windshields, which substantially impair the Class Vehicles' use, safety, and value to Plaintiff Ojo and the Massachusetts Class Members.

210.    Plaintiff Ojo and the Massachusetts Class Members have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

211.    As a result of said nonconformities, Plaintiff Ojo and the Massachusetts Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

212.    Plaintiff Ojo and the Massachusetts Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Ojo and the Massachusetts Class Members' acceptance of the Class Vehicles.

213.    Plaintiff Ojo and the Massachusetts Class Members would not have purchased the

Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the rear windshields did not function as advertised and warranted.

214.     As a result of Defendant's breach of express warranties, Plaintiff Ojo and the Massachusetts Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Plaintiff Ojo and the Massachusetts Class Members actually received.

## TENTH CAUSE OF ACTION
### Violation of M.G.L. 93A § 2, *et seq.*
### (Plaintiff Ojo on behalf of the Massachusetts Class)

215.     The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

216.     Chapter 93A, M.G.L. 93A § 2, prohibits and declares unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

217.     Defendant violated M.G.L. 93A § 2 by breaching its express and implied warranties.

218.     The Class Vehicles' Rear Windshield Defect poses an unreasonable safety risk to consumers and other members of the public with whom they share the road, because the defect causes the drivers to be distracted when operating their vehicles.

219.     In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the Class Vehicles are defective. The existence of the Rear Windshield Defect, which manifests in all or substantially all of the Class Vehicles, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, impairs the vehicles' ability to provide safe and reliable transportation, and causes the Class Vehicles to be worth

substantially less than they would otherwise be valued.

220.    As a result of Defendant's acts, Plaintiff and Class Members have suffered damages in that they are left with vehicles of diminished value and utility because of the Rear Windshield Defect, which continues to pose a serious safety risk.

221.    Defendant's failure to disclose the Rear Windshield Defect to Plaintiff Ojo and Massachusetts Class Members and its breach of warranties constitute an unfair or deceptive act in violation of MGL. c. 93A § 2.

222.    Defendant willfully or knowingly violated Chapter 93A and as such, Plaintiff Ojo and Massachusetts Class Members are entitled to double or treble damages plus reasonable attorney's fees and costs.

223.    Pursuant to M.G.L. c. 93A, § 9, Plaintiff Ojo and Massachusetts Class Members are entitled to and do seek appropriate injunctive relief, recovery of actual damages, treble damages, and his reasonable costs and attorneys' fees.

## ELEVENTH CAUSE OF ACTION
### Breach of Express Warranty pursuant to N.Y. UCC § 2-313
### (Plaintiff Stewart on behalf of the New York Class)

224.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

225.    In connection with the sale or lease of the Class Vehicles to Plaintiff Stewart and the New York Class Members, Defendant provided to Plaintiff Stewart and the New York Class Members with express warranties within the meaning of N.Y. UCC § 2-313.

226.    Specifically, in connection with the sale or lease of the Class Vehicles to Plaintiff Stewart and the New York Class Members, Defendant provided Plaintiff Stewart and the New York Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or

replace original components found to be defective in material or workmanship within the first 36 months or 36,000 miles in service, whichever comes first.

227.    Plaintiff Stewart and the New York Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

228.    Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the rear windshields, which substantially impair the Class Vehicles' use, safety, and value to Plaintiff Stewart and the New York Class Members.

229.    Plaintiff Stewart and the New York Class Members have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

230.    As a result of said nonconformities, Plaintiff Stewart and the New York Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

231.    Plaintiff Stewart and the New York Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Stewart and the New York Class Members' acceptance of the Class Vehicles.

232.    Plaintiff Stewart and the New York Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the rear windshields did not function as advertised and warranted.

233.    As a result of Defendant's breach of express warranties, Plaintiff Stewart and the New York Class Members have been damaged in an amount that is the difference between the

value of Class Vehicles if they had possessed the qualities and attributes represented and the

value of the Class Vehicles Plaintiff Stewart and the New York Class Members actually

received.

**TWELFTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**pursuant to 13 Pa. C.S. § 2A212**
**(Plaintiff Fry on behalf of the Pennsylvania Class)**

234.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint

as though fully stated herein.

235.    Defendant is a merchant with respect to motor vehicles.

236.    The Class Vehicles were subject to implied warranties of merchantability running

from the Defendant to Plaintiff Fry and the Pennsylvania Class Members.

237.    An implied warranty that the Class Vehicles were merchantable arose by

operation of law as part of the sale or lease of the Class Vehicles.

238.    Defendant breached the implied warranty of merchantability in that the Class

Vehicles suffer from the above-described Rear Windshield Defect and thus were not in

merchantable condition when Plaintiff Fry and the Pennsylvania Class Members purchased or

leased them, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes

for which such vehicles are used.

239.    Defendant has breached the implied warranty of merchantability because the

Class Vehicles when sold or leased would not pass without objection in the trade.

240.    As a result of Defendant's breach of the applicable implied warranties, owners

and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value

of their Class Vehicles.

241.    Additionally, as a result of the Rear Windshield Defect, Plaintiff Fry and the

Pennsylvania Class Members were harmed and suffered actual damages.

242.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of 13 Pa. C.S. § 2A212.

## THIRTEENTH CAUSE OF ACTION
### Breach of Express Warranty pursuant to 13 Pa. C.S. § 2A210
### (Plaintiff Fry on behalf of the Pennsylvania Class)

243.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

244.    In connection with the sale or lease of the Class Vehicles to Plaintiff Fry and the Pennsylvania Class Members, Defendant provided Plaintiff Fry and the Pennsylvania Class Members with express warranties within the meaning of 13 Pa. C.S. § 2A210.

245.    Specifically, in connection with the sale or lease of the Class Vehicles to Plaintiff Fry and the Pennsylvania Class Members, Defendant provided Plaintiff Fry and the Pennsylvania Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace original components found to be defective in material or workmanship within the first 36 months or 36,000 miles in service, whichever comes first.

246.    Plaintiff Fry and the Pennsylvania Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

247.    Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the rear windshields, which substantially impair the Class Vehicles' use, safety, and value to Plaintiff Fry and the Pennsylvania Class Members.

248.    Plaintiff Fry and the Pennsylvania Class Members have given Defendant

reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

249.    As a result of said nonconformities, Plaintiff Fry and the Pennsylvania Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

250.    Plaintiff Fry and the Pennsylvania Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Fry and the Pennsylvania Class Members' acceptance of the Class Vehicles.

251.    Plaintiff Fry and the Pennsylvania Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the rear windshields did not function as advertised and warranted.

252.    As a result of Defendant's breach of express warranties, Plaintiff Fry and the Pennsylvania Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Plaintiff Fry and the Pennsylvania Class Members actually received.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

        a.    An order certifying the proposed Classes, designating Plaintiffs as named representative of the Classes, and designating the undersigned as Class Counsel;

b.  An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c.  An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d.  Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e.  A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f.  Reasonable attorneys' fees and costs;

g.  Pre-judgment and post-judgment interest, as provided by law;

h.  Plaintiffs demand that Defendant perform a recall, and repair all Class Vehicles; and

i.  Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  October 27, 2023

Respectfully submitted,

By:      */s/ Jody B. Burton*
Jody B. Burton, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250

Facsimile:  (203) 653-3424
*Attorneys for Plaintiff*