UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRY FRY, et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>                Defendant. | CIVIL ACTION NO. 1:23-CV-01782<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

This lawsuit arises out of injuries caused by allegedly defective rear windshields made and/or sold by Defendant American Honda Motor Co. Inc. ("AHM"). Plaintiffs Sherry Fry ("Plaintiff Fry"), Brittani Barnes, Brittany Cabral, Tristan Fairbanks, Janet Ojo, Jessica Stewart, Kayla McClain, and Ellen Einhorn (collectively, "Plaintiffs") filed this lawsuit on behalf of themselves and those similarly situated on October 27, 2023. (Doc. 1). The applicable amended complaint was filed on February 22, 2024. (Doc. 15). Before the Court now is a motion to dismiss (Doc. 17) and a motion to compel Plaintiff Fry to arbitrate her claims with AHM. (Doc. 28). For the following reasons, the Court will **GRANT** AHM's motion to compel arbitration (Doc. 28) and AHM's motion to dismiss will be held in **ABEYANCE** (Doc. 17) pending the resolution of arbitration proceedings.

I. **FACTUAL BACKGROUND**

The following relevant background is taken from Plaintiffs' amended complaint and the parties' filings as they relate to AHM's motion to compel arbitration. (Doc. 15; Doc. 29-2; Doc. 29-3). Plaintiffs bring their claims on behalf of themselves as well as a proposed class of 2023 Honda HR-V vehicle owners. Plaintiffs allege that AHM "designed, manufactured,

marketed, distributed, sold, warranted, and serviced" 2023 Honda HR-V vehicles with defective rear windshields. (Doc. 15, ¶ 1). Specifically, Plaintiffs allege:

> During the rear windshield assembly process, the sealer used to secure the rear glass in the [2023 Honda HR-V vehicles] comes into contact with the heating elements of the defroster, leading to a hot spot and weakening of the glass over time as the defroster is used, and which eventually results in the rear windshield shattering.
>
> (Doc. 15, ¶ 3).

As a result of the defect, Plaintiffs allege that proposed class members' "rear windshields shattered for no reason at all, often while vehicles were parked" and that "[t]he shattering is so powerful that startled drivers have compared it to the loud popping noise, followed by a rain of glass falling on the occupants of the vehicle, sometimes while driving at highway speeds." (Doc. 15, ¶¶ 4, 6). Still, AHM "has refused to repair or replace the defective rear windshields in the [2023 Honda HR-V vehicles] under [AHM's] warranty, requiring that Class Vehicle owners pay hundreds or thousands of dollars to repair the Defect." (Doc. 15, ¶ 7). Plaintiffs thus initiated this class action lawsuit seeking damages, equitable relief, and fees and costs. (Doc. 15, at 81).

Relevant to AHM's motion to compel arbitration is Plaintiff Fry's lease of her affected vehicle. On or about August 8, 2022, Plaintiff Fry leased a 2023 Honda HR-V (the "Vehicle") from non-party Baierl Honda and executed a "Closed End Motor Vehicle Lease" ("Lease"). (Doc. 15, ¶¶ 35-36; Doc. 29-2). The Lease contains the following agreement to arbitrate ("Arbitration Provision"):

> "Any claim or dispute . . . including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute . . . between you and us or our parents, subsidiaries, affiliates, employees, officers, agents, representatives, predecessors, successors or assigns (individually and collectively "us" and "our") which arises out of or relates to your credit

application, origination or servicing of this Lease, the manufacture, delivery, condition, or performance of this Vehicle, any representations, omissions, or warranties, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Doc. 29-3).

The Lease was signed by Plaintiff Fry, Baierl Honda and Assignee Honda Lease Trust ("HLT"). (Doc. 29-3, at 6).

The Lease also contains an acknowledgement of the Arbitration Provision and an opt-out right, which Plaintiff Fry signed separately. (Doc. 29-3). The acknowledgment states: "By signing below, you agree that, pursuant to the Arbitration Provision, Item 26 above, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate." (Doc. 29-3; Doc. 31, at 8). The parties do not dispute that the Lease is a binding contract governed by the Federal Arbitration Act ("FAA"). (Doc. 29-3; Doc. 31, at 10-11 n.3).

On March 21, 2024, AHM filed its motion to dismiss with a brief in support. (Doc. 17; Doc. 18). Plaintiffs filed their brief in opposition on April 18, 2024. (Doc. 24). On May 7, 2024, AHM filed a reply brief. (Doc. 25). With leave of Court, the parties subsequently filed supplemental briefing and exhibits. (Doc. 41; Doc. 42; Doc. 44; Doc. 45; Doc. 47; Doc. 48). Accordingly, the motion to dismiss is ripe and ready for disposition.

On June 11, 2024, AHM filed the instant motion to compel Plaintiff Fry to arbitrate her claims. (Doc. 28). On June 12, 2024, AHM properly filed its brief in support. (Doc. 31). On July 9, 2024, Plaintiffs filed a brief in opposition. (Doc. 35). On August 5, 2024, AHM filed a reply brief. (Doc. 39). Accordingly, AHM's motion to compel arbitration is ripe and ready for discussion.

## II. LEGAL STANDARD

### A. MOTION TO COMPEL ARBITRATION

"It is well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). However, "the cardinal principle of the law of arbitration is that 'under the [FAA, arbitration] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.'" *Gay v. CreditInform*, 511 F.3d 369, 388 (3d Cir. 2007) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). The Federal Arbitration Act provides that "[a] written provision in any. . .contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract. . .shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity. . ." 9 U.S.C. § 2. The Supreme Court has interpreted the FAA to require courts to "rigorously enforce arbitration agreements according to their terms, including terms that 'specify with whom the parties choose to arbitrate their disputes,' and 'the rules under which that arbitration will be conducted.'" *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013) (internal citations omitted); see *MacDonald v. CashCall, Inc*, 883 F.3d 220, 226 (3d Cir. 2018). Federal law determines whether an issue governed by the FAA is referable to arbitration." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). "Questions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 n. 32 ("[The FAA] creates a body of federal

substantive law establishing and regulating the duty to honor an agreement to arbitrate...."). Section 2 of the FAA sets forth the basic rule of federal law:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Nevertheless, notwithstanding the supremacy of federal law, courts look to ordinary state law principles of contract formation to make this determination. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003); *Gay*, 511 F.3d at 388.

To compel arbitration, a court must determine (1) the validity of the arbitration agreement and (2) whether the dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *Bey v. Citi Health Card*, Civ. Action No. 15-6533, 2017 WL 2880581, at *4–5 (E.D. Pa. July 6, 2017). Under the Supreme Court's longstanding severability rule, "a party cannot avoid arbitration by attacking the contract containing the arbitration clause as a whole (the 'container contract'). Rather, the party opposing arbitration must challenge 'the arbitration clause itself.'" *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967)). When "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is unenforceable based on a generally applicable contractual defense, such as unconscionability.*" Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004); see *Gay*, 511 F.3d at 388 ("[G]enerally applicable contract defenses, such as fraud, duress, or

5

unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]." (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, (1996)).

"The Third Circuit has established a two-tiered framework for assessing motions to compel arbitration." *Lloyd v. Retail Equation, Inc.*, No. CV 21-17057, 2022 WL 18024204, at *4 (D.N.J. Dec. 29, 2022) (citing to *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013)). First, "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti*, 716 F.3d at 776 (quotation marks omitted); *see Lepore v. SelectQuote Ins. Servs., Inc.*, No. 22-3390, 2023 WL 8469761, at *2 (3d Cir. Dec. 7, 2023). "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Guidotti*, 716 F.3d at 776 (quotation marks omitted). "To proceed otherwise would plainly disadvantage moving parties because they would be limited to the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents relied upon by the complaint, even when non-moving parties introduced and relied on other evidence in opposition." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 330 (3d Cir. 2022). After this, the court may entertain a renewed motion to compel arbitration, this time judging the motion under the summary judgment standard of Rule 56. *Guidotti*, 716

F.3d at 776.[1] In the event that summary judgment is not warranted because "the party opposing arbitration can demonstrate, by means of citations to the record," that there is "a genuine dispute as to the enforceability of the arbitration clause," the "court may then proceed summarily to a trial regarding 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same,' as Section 4 of the FAA envisions." *Somerset Consulting, LLC v. United Cap. Lenders, LLC,* 832 F. Supp. 2d 474 (E.D. Pa. 2011) (quoting 9 U.S.C. § 4).

B. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents

---

[1] Several courts within this district have denied motions to compel arbitration and ordered limited discovery where the issue of arbitrability was not apparent on the face of the complaint, properly applying *Guidotti*. *See, e.g.*, *Reaser v. Credit One Financial*, No. 3:15-CV-1765, 2016 WL 245541, at *3 (M.D. Pa. Jan. 21, 2016) (Caputo, J.); *Potts v. Credit One Financial*, No. 3:15-CV-1119, 2016 WL 225678, at *5 (M.D. Pa. Jan. 19, 2016) (Nealon, J.) (allowing sixty (60) day limited discovery on the issue of arbitrability); *Rajput v. Credit One Financial*, No. 1:15-cv-00807, 2015 WL 8012938, at *3 (M.D. Pa. Dec. 12, 2015) (Kane, J.); *Briggs v. Macy's Inc.*, No. CV 3:16-0902, 2017 WL 590274, at *1 (M.D. Pa. Feb. 14, 2017) (Mannion, J.).

.

7

incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for

which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### III. DISCUSSION

#### A. MOTION TO COMPEL PLAINTIFF FRY TO ARBITRATE HER CLAIMS

The Court first addresses a few primary matters. First, the parties do not dispute the validity of the Arbitration Provision at issue in the Lease. Second, in consideration of the Third Circuit's holding in *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, this Court finds the instant motion may be resolved by looking at the complaint and the documents relied upon therein. Thus, the Court will review the instant motion to compel arbitration under a motion to dismiss standard and not order discovery on the issue of arbitrability. 716 F.3d 764, 776 (3d Cir. 2013). Lastly, the parties do not dispute that the Lease contains a valid arbitration provision under the FAA and that the FAA governs this dispute. (Doc 29-3). Accordingly, this Court will defer to the FAA and is mindful that "[t]he FAA establishes a strong federal policy in favor of compelling arbitration over litigation." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020) (citing *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000)).

Turning now to the merits of AHM's motion, the Lease is an "undisputedly authentic document[] relied upon" by the parties and referenced in the complaint. (Doc. 29-3; Doc. 15, ¶¶ 35-36); *Guidotti*, 716 F.3d at 776. According to AHM, by signing the Lease, Plaintiff Fry "agreed to arbitrate—not litigate—the claims she now seeks to assert against American Honda Motor Co., Inc. ("AHM")." (Doc. 31, at 5). AHM explains that Plaintiff Fry's claims

9

fall squarely within the Arbitration Provision contained in the Lease it accounts for "[a]ny claim or dispute, whether in contract, tort, statute or otherwise … between you and us … which arises out of or relates to … the manufacture, delivery, condition, or performance of this Vehicle, any representations, omissions, or warranties." (Doc. 29-3, at 5; Doc. 31, at 5). AHM continues that, as an affiliate of the Baierl Honda and HLT through Honda's "corporate family tree," it has authority to enforce the Arbitration Provision even as a non-signatory, both as a third-party beneficiary and under the principles of equitable estoppel. (Doc. 31, at 2, 19). AHM continues that regardless, the arbitrability of Plaintiff Fry's claims should be determined by an arbitrator, not the Court. (Doc. 31, at 2).

Plaintiff Fry disagrees. First, she argues that her claims are not inextricably intertwined with the Lease and do not fall within the scope of the arbitration provision. (Doc. 35, at 2). Next, Plaintiff Fry avers that AHM cannot enforce the arbitration provision as a third-party beneficiary or under the theory of equitable estoppel. (Doc. 35, at 2). Lastly, Plaintiff Fry asserts that this Court should determine the arbitrability of Plaintiff Fry's claims because there is no "clear and unmistakable" evidence supporting AHM's contention that Plaintiff Fry agreed to arbitrate her claims. (Doc. 35, at 2, 17). The Court will address each argument in turn.

### 1. The Plain Language of the Lease

The parties dispute whether AHM may enforce the Arbitration Provision as a non-signatory to the Lease. Plaintiff Fry asserts that AHM is not included in the Arbitration Provision's definition of "us" and "our" and that "[u]nder the plain language of the Lease Agreement, AHM cannot enforce the arbitration provision and plaintiff's claims do not fall within the scope of arbitrable Claim." (Doc. 35, at 9). AHM disagrees, providing that the

Arbitration Provision specifically accounts for affiliates of Baierl Honda and HLT and for claims involving manufacturing issues. (Doc. 31, 13-14; Doc. 39, at 13).

Under the plain language of the Lease, AHM may enforce the Arbitration Provision as a non-signatory. The Arbitration Provision expressly extends the power to compel arbitration to "parents, subsidiaries, affiliates, employees, officers, agents, representatives, predecessors, successors or assigns," of Baierl Honda and HLT, including such entities in the provision's definition of "us" and "our." (Doc. 29-3, at 6). AHM explains that it is covered by the Arbitration Provision's definition of "us" and "our" as an affiliate and through its parent company, Honda Motor Japan. According to AHM:

> Honda Lease Trust, the Assignee of the Lease, is an affiliate of HFS, which is itself named in the Lease as an entity that "helped arrange this lease." See Lease at 1. HFS is a DBA of American Honda Finance Corporation ("AHFC"). See Request for Judicial Notice, Ex. A (Honda Motor Co., Ltd's 2023 SEC Form 20-F). AHFC is a subsidiary of Honda Motor Japan, which is also AHM's parent company. See id. at 42. This corporate family tree gives AHM the right to enforce the Arbitration Provision as an affiliated entity.

(Doc. 31, at 19).

AHM further identifies itself as a "third party that provided a product or service in connection with the Lease" as the manufacturer of the vehicle at issue.[2] (Doc. 31, at 19). Thus, AHM

---

[2] AHM asks this Court to take judicial notice of Honda Motor Co., Ltd's 2023 SEC Form 20-F, as it establishes several corporate relationships that AHM relies on in bringing its motion. (Doc. 30). The Court may take judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The Court may take notice of an SEC filing as matter of public record. *See Schmidt v. Skolas*, 770 F.3d 24, 2491 (3d Cir. 2014) ("SEC filings. . .are matters of public record of which the court can take judicial notice.").

posits that it may enforce the Arbitration Provision as an affiliate. (Doc. 31, at 19). Black's Law Dictionary defines an affiliate as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Slamon v. Carrizo LLC*, 654 F. Supp. 3d 405, 425 (M.D. Pa. Feb. 7, 2023) (citing Black's Law Dictionary (11th ed. 2019)). AHM's relationship to HLT and Baierl Honda undoubtedly meets this definition. Thus, under the plain language of the Lease, AHM can enforce the Arbitration Provision as an affiliate.

Under the plain language of the Lease, Plaintiff Fry's claims also fall within the scope of the Arbitration Provision. (Doc. 29-3). This case arises out of an alleged manufacturing defect with Plaintiff's vehicle's rear windshield and AHM's violation of various warranties. (Doc. 15). The Arbitration Provision expressly covers manufacturing and warranty disputes, providing the parties agree to arbitrate "[a]ny claim or dispute, whether in contract, tort, statute or otherwise … between you and us … which arises out of or relates to … the manufacture, delivery, condition, or performance of this Vehicle, any representations, omissions, or warranties." (Doc. 29-3, at 6; Doc. 31, at 13-14). Thus, Plaintiff Fry's argument that the Arbitration Provision does not cover her claims necessarily fails. (Doc. 35, at 7). Given that this Court finds AHM is an affiliate of both HLT and Baierl Honda and Plaintiff Fry's claims are within the scope of the Arbitration Provision, the Court finds AHM can enforce the agreement under the plain language of the Arbitration Provision.

### 2. Equitable Estoppel

Even beyond the plain language of the Arbitration Provision, this Court can enforce the Arbitration Provision under the doctrine of equitable estoppel. Courts have broad authority to enforce arbitration agreements against non-signatories under "traditional

principles of contract and agency law[.]" *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001). This includes the theory of equitable estoppel. *Noye v. Johnson & Johnson Servs., Inc.*, 765 F. App'x 742, 745 (3d Cir. 2019). Generally, in the arbitration context, "equitable estoppel allows a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020) (internal citations omitted). "The FAA permits a nonsignatory to rely on state-law equitable estoppel doctrines to enforce an arbitration agreement." *GE Energy Power Conversion France*, 590 U.S. at 438. Considering Pennsylvania's equitable estoppel doctrine, "non-signatories to an arbitration agreement can enforce such an agreement when there is an obvious and close nexus between the non-signatories and the contract or the contracting parties." *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa. Super. Ct. 2006); *see also Noye,* 765 F. App'x at 746. In determining whether a close nexus exists between the contract and the non-signatory, courts consider whether the claims are inextricably entwined with the contract. *Noye,* 765 F. App'x at 746. In doing so, courts determine whether the claims "rely on the terms of the agreement or assume the existence of, arise out of, or relate directly to, the written agreement." *Hagenbaugh v. Nissan N. Am.*, No. CV 3:20-1838, 2023 WL 361786, at *6 (M.D. Pa. Jan. 23, 2023).

 Here, the Lease specifies that the vehicle at issue "is subject to the manufacturer's standard warranty[.]" (Doc. 29-3, at 3). In the complaint, Plaintiff Fry alleges AHM violated both implied and express warranties that arose when she signed the Lease. (Doc. 15, ¶¶ 272-79, 281-90). Many of her allegations assume the existence of the Lease by referencing the

"sale" and "lease" of the vehicle or explicitly refer to it. (Doc. 15, ¶¶ 35-36, 272-79, 281-90). For example, Plaintiff Fry alleges her vehicle was subject to an "implied warranty that [it was] merchantable [which] arose by operation of law as part of the sale or lease." (Doc. 15, ¶¶ 157, 275). Plaintiff Fry also alleges that "[i]n connection with the sale or lease of [her vehicle to] Plaintiff Fry and the Pennsylvania Class Members, [AHM] provided Plaintiff Fry and the Pennsylvania Class Members with express warranties within the meaning of 13 Pa. C.S. § 2A210." (Doc. 15, ¶ 282). Because, based on the language of the amended complaint, these warranties arose with her signing the Lease, Plaintiff Fry's claims "assume the existence of" the Lease such that her claims can be said to be inextricably entwined with it.³ *Hagenbaugh*, 2023 WL 361786, at *6; *Noye*, 765 F. App'x at 746. Thus, this Court finds that equitable estoppel also enables AHM to enforce the Arbitration Provision.⁴

---

³ Plaintiff Fry argues that because the Lease disclaims all express or implied warranties, her claims are not "inextricably entwined with the Lease[.]" (Doc. 35, at 16). However, the Lease states that the vehicle is subject to all the manufacturer's standard warranties. Furthermore, the Arbitration Provision specifically states that all claims arising out of the vehicle's warranties are to be subject to arbitration. (Doc. 29-3, at 6). Accordingly, for purposes of the instant motion, the Court finds that Plaintiff Fry's Lease and the Arbitration Provision therein are inextricably entwined with her claims such that AHM may enforce the Arbitration Provision.

⁴ Even though in the context of equitable estoppel the Third Circuit has adopted a single factor test requiring either a showing that there exists close nexus between the non-signatories and the contract or the contracting parties, the Court finds that here there is a close nexus with the Lease and AHM, as well as a close nexus between the non-signatories and the contracting parties. As explained *supra*, HLT, Baierl Honda, and AHM are affiliates under the same parent company. *Cf. Murphy v. Epiq Glob. Bus. Transformation Sols., LLC*, No. 2:21-CV-01624, 2022 WL 17578821 (W.D. Pa. Dec. 12, 2022) (finding a non-signatory could enforce an arbitration provision where the agreement applied to the named signatories and their "affiliates"). Thus, it is reasonable to assume there is a close nexus between the signatories and AHM, especially given the language of the Arbitration Provision at issue.

### 3. Third-Party Beneficiary

Similarly, the Court finds AHM may enforce the Arbitration Provision as a third-party beneficiary. "Pennsylvania extends third-party beneficiary status to nonsignatories who are 'closely related' to a signatory or to the contract at issue, without regard to whether the contract states they are intended beneficiaries." *Heaster v. EQT Corp.*, No. CV 19-1463, 2020 WL 5536078, at *7 (W.D. Pa. Aug. 17, 2020), *report and recommendation adopted*, No. 2:19CV1463, 2020 WL 5526700 (W.D. Pa. Sept. 15, 2020). The Third Circuit has recognized "whether seeking to avoid or compel arbitration, a third party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third party beneficiary." *DuPont de Nemours & Co.*, 269 F.3d at 195.

Here, Plaintiff Fry argues that AHM is not a third-party beneficiary of the Lease because, despite AHM's claims otherwise, it is not a "related entity" covered by the terms of the Arbitration Provision. (Doc. 35, at 17). Plaintiff avers that AHM has also failed to identify the benefits it stands to receive under the Lease. (Doc. 35, at 17). AHM argues that it can enforce the Arbitration Provision as a third-party beneficiary because it is an affiliate of HLT and as such, is expressly covered by the Arbitration Provision's definition of "us" and "our." (Doc. 31, at 11). Furthermore, AHM claims it "is a third party that provided a product or service in connection with the Lease. Namely, Plaintiff alleges that AHM manufactured the Vehicle covered by the Lease, and also provided the accompanying warranty that Plaintiff alleges has been breached." (Doc. 31, at 19).

As explained *supra*, the Court agrees with AHM's conclusion that is it covered in the Arbitration Provision's definition of "us" and "our." Furthermore, as also previously explained, the Arbitration Provision expressly covers claims arising out of manufacturing of

the vehicle, which are the essence of this lawsuit. (Doc. 15; Doc. 29-3). Thus, the Court finds that AHM can enforce the Arbitration Provision as a third-party beneficiary.

### 4. Whether Arbitrability Should be Decided by this Court or an Arbitrator

Beyond the aforementioned bases for enforcing the Arbitration Provision, the parties dispute whether the arbitrability of Plaintiff Fry's claims should be determined by the Arbitrator or this Court. (Doc. 31, at 20; Doc. 35, at 17 Doc. 39, at 12). According to AHM, the Arbitration Provision contains a delegation clause which delegates disputes about enforcement of the Arbitration Provision to an Arbitrator. (Doc. 31, at 21). AHM contends that "any dispute regarding AHM's ability to enforce the arbitration agreement as a non-signatory is also an issue of arbitrability that must be decided by the arbitrator." (Doc. 31, at 22). Plaintiff Fry refutes this, stating "[t]he only references in the agreement to arbitration of arbitrability . . . exclude AHM." (Doc. 35, at 17).

"[C]ontracting parties can agree that arbitrators, not courts, shall resolve arbitrability issues by including in the contract a so-called 'delegation provision' conferring upon the arbitrators the 'exclusive authority' to decide those gateway matters." *MZM Constr. Co., Inc.*, 974 F.3d at 399. Such a delegation provision is severable and to be reviewed separate from the container contract, in this case the Lease. *See Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 446 (2006). "[C]onsistent with the severability doctrine, unless the party opposing arbitration challenges the delegation provision specifically, the district court must treat it as valid and must enforce it by sending any challenge to the validity of the underlying arbitration agreement to the arbitrator." *MZM Constr. Co., Inc.*, 974 F.3d at 399.

Here, the Court again agrees with AHM that the Arbitration Provision contains an unambiguous delegation clause which delegates all disputes surrounding the arbitrability of

Plaintiff Fry's claims to an Arbitrator. (Doc. 29-3). For reasons already stated, the Court disagrees with Plaintiff Fry that the Arbitration Provision excludes AHM. As an affiliate of HLT and Baierl Honda, AHM has standing to enforce the delegation clause. Thus, as stated by AHM, "questions regarding AHM's ability to enforce the Arbitration Provision as a non-signatory, and whether Plaintiff's claims fall within the ambit of the Arbitration Provision, must be decided by the arbitrator." (Doc. 39, at 12-13).

This all considered, the Court will **GRANT** AHM's motion to compel arbitration. This action will be **STAYED** pending the arbitration.

### B. AHM's Motion to Dismiss for Failure to State a Claim

Having determined Plaintiff's Fry's claims are subject to arbitration, this Court declines to address AHM's pending motion to dismiss as it relates to the rest of Plaintiffs at this time. Instead, AHM's motion will be held in abeyance until the resolution of AHM and Plaintiff Fry's arbitration proceedings. As stated by the Supreme Court, a "stay [of] litigation among the non-arbitrating parties pending the outcome of the arbitration" is "a matter of [the district court's] discretion to control its docket[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983). "The Third Circuit has found decisions to stay arbitration proper in circumstances where non-parties to an arbitration agreement 'have related and congruent interests with [those of the parties who were also] principals to the litigation.'" *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359 n.11 (E.D. Pa. 2003) (citing *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 938 (3d Cir. 1985), *overruled on other grounds, Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110 (3d Cir.1993)). Here, Plaintiff Fry's claims are nearly identical to the rest of Plaintiffs. Accordingly, this Court finds it is within the best interests of the parties and the Court to stay this action as to Plaintiff Fry, as well as the rest

of Plaintiffs. Upon lifting the stay, the Court will be in a better position to analyze AHM's pending motion to dismiss, as well as the parties' supplemental briefings.

## IV.    CONCLUSION

Based on the foregoing, AHM's motion to compel Plaintiff Fry to arbitrate her claims and stay this action is **GRANTED**. (Doc. 28). Plaintiff Fry is **COMPELLED** to arbitrate her claims with AHM. This matter will be **STAYED** pending the outcome of the arbitration, and AHM's motion to dismiss will be held in **ABEYANCE** until the resolution of the arbitration proceedings. (Doc. 17).

An appropriate Order follows.

BY THE COURT:

**Date: March 27, 2025**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**