UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHERRY FRY, BRITTINI BARNES, BRITTANY CABRAL, TRISTAN FAIRBANKS, JANET OJO, JESSICA STEWART, KAYLA MCCLAIN, ELLEN EINHORN, *ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED*, | CIVIL ACTION NO. 1:23-CV-01782 (MEHALCHICK, J.) |
| Plaintiffs | |
| v. | |
| AMERICAN HONDA MOTOR CO. INC., | |
| Defendant. | |

**MEMORANDUM**

Before the Court is Defendant American Honda Motor Co.'s ("Honda") motion to dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure. (Doc. 17). Plaintiffs Sherry Fry, Brittini Barnes, Brittany Cabral, Tristan Fairbanks, Janet Ojo, Jessica Stewart, Kayla McClain, and Ellen Einhorn (collectively, "Plaintiffs"), initiated this action by filing a class action complaint (Doc. 1) on October 27, 2023 and the operative a first amended class action complaint on February 22, 2024. (Doc. 1; Doc. 15). For the following reasons, Honda's motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 17).

I.    **BACKGROUND AND PROCEDURAL HISTORY**

The following background is derived from Plaintiffs' amended complaint and the parties' supplemental briefs. (Doc. 15; Doc. 47; Doc. 48). Plaintiffs bring this action on their

own behalf and on behalf of a nationwide class pursuant to Rule 23 of the Federal Rules of Civil Procedure. (Doc. 15, ¶ 158). In the alternative to the nationwide class, Plaintiffs seek to represent state-specific classes, comprised of members from California, Georgia, Massachusetts, New Jersey, New York, Pennsylvania, and Texas. (Doc. 15, ¶ 159). The named Plaintiffs and proposed class members are all individuals who either currently own or lease or have previously owned or leased 2023 Honda HR-V vehicles ("Class Vehicles"). (Doc. 15, ¶¶ 1, 21-28). Honda is a business that "distributes Honda vehicles in the United States and sells these vehicles through its network of dealers." (Doc. 15, ¶ 30). Honda is headquartered at 1919 Torrance Boulevard, California 90501-2746, and is registered to do business in the Commonwealth of Pennsylvania, with its registered agent, "Corporation Service Company," located at 2595 Interstate Drive, #103, Harrisburg, Pennsylvania 17110. (Doc. 15, ¶ 29).

Plaintiffs allege that during the rear windshield assembly process for the Class Vehicles, "the sealer used to secure the rear glass in the Class Vehicles comes into contact with the heating elements of the defroster, leading to a hot spot and weakening on the glass over time as the defroster is used, eventually causing the rear windshields to spontaneously shatter" (the "Rear Windshield Defect"). (Doc. 15, ¶¶ 3, 143). As a result of the flawed assembly process, Plaintiffs contend that "[t]he Class Vehicles suffer from the Rear Windshield Defect." (Doc. 15, ¶ 143). The parties do not dispute that all Class Vehicles purchased or leased by the Plaintiffs came with Honda's New Vehicle Limited Warranty (the "Warranty"), which "promised to 'repair or replace any part that is defective in material or workmanship under normal use' without charge within 3 years or 36,000 miles in service, whichever occurs first." (Doc. 15, ¶¶ 38, 49, 60, 71, 82, 95, 110, 129).

All Named Plaintiffs allege that they experienced the Rear Windshield Defect unexpectedly, with no impact from any foreign object, and while the Class Vehicles were covered by the Warranty:

- Plaintiff Fry leased the Class Vehicle from an authorized Honda dealership in Pennsylvania in August of 2022. (Doc. 15, ¶ 35). On September 12, 2023, when her vehicle odometer read about 9,000 miles, Plaintiff Fry experienced the Rear Windshield Defect when "she heard a loud unexpected popping sound" of her rear windshield shattering as she started her parked car.[1] (Doc. 15, ¶ 41).

- Plaintiff Barnes purchased the Class Vehicle from an authorized Honda dealership in Georgia in September of 2022. (Doc. 15, ¶ 46). On June 26, 2023, when her vehicle odometer read about 9,000 miles, Plaintiff Fry experienced the Rear Windshield Defect when the rear windshield suddenly shattered as she "sat inside her car while it was parked." (Doc. 15, ¶ 52).

- Plaintiff Cabral purchased the Class Vehicle from an authorized Honda dealership in California on July 25, 2022. (Doc. 15, ¶ 57). On July 8, 2023, when her vehicle odometer read about 13,000 miles, Plaintiff Cabral experienced the Rear Windshield Defect when the rear windshield suddenly shattered while her vehicle was parked under a shed. (Doc. 15, ¶ 63).

- Plaintiff Fairbanks purchased the Class Vehicle from an authorized Honda dealership in California on October 29, 2022. (Doc. 15, ¶ 68). On June 30, 2023, when her vehicle odometer read about 5,000 miles, Plaintiff Fairbanks experienced the Rear Windshield Defect when her rear windshield "shattered all of a sudden when the vehicle was parked in a parking lot." (Doc. 15, ¶ 74).

- Plaintiff Ojo purchased the Class Vehicle from an authorized Honda dealership in Massachusetts in October of 2022. (Doc. 15, ¶ 79). On June 24, 2023, Plaintiff Ojo experienced the Rear Windshield Defect when her rear windshield shattered as she put her vehicle in reverse. (Doc. 15, ¶ 85). The amended complaint does not allege the mileage of Plaintiff Ojo's vehicle at the time the Rear Windshield Defect occurred. (Doc. 15).

- Plaintiff Stewart purchased the Class Vehicle from an authorized Honda dealership in New York in June of 2022. (Doc. 15, ¶ 92). On July 20, 2023, Plaintiff Stewart experienced the Rear Windshield Defect when the rear windshield "shattered all of a sudden while [she] was driving her car with her daughter in the vehicle." (Doc. 15, ¶ 98). The amended complaint does not allege the mileage of Plaintiff Stewart's vehicle at the time the Rear Windshield Defect occurred. (Doc. 15).

---

[1] Fry voluntarily dismissed her claims in this action on July 24, 2025. (Doc. 58).

- Plaintiff McClain purchased the Class Vehicle from an authorized Honda dealership in Texas on October 3, 2022. (Doc. 15, ¶ 107). On October 10, 2023, Plaintiff McClain experienced the Rear Windshield Defect when the rear windshield "shattered all of a sudden while [the] Vehicle was parked at the gym parking lot." (Doc. 15, ¶ 113). The amended complaint does not allege the mileage of Plaintiff McClain's vehicle at the time the Rear Windshield Defect occurred. (Doc. 15).

- Plaintiff Einhorn purchased the Class Vehicle from an authorized Honda dealership in New Jersey in August of 2022. (Doc. 15, ¶ 126). On September 10, 2023, Plaintiff Einhorn experienced the Rear Windshield Defect when the rear windshield shattered while she was parked at a restaurant. (Doc. 15, ¶ 132). The amended complaint does not allege the mileage of Plaintiff Einhorn's vehicle at the time the Rear Windshield Defect occurred. (Doc. 15).

Plaintiffs allege "thousands of purchasers and lessees of the Class Vehicles have experienced the Rear Windshield Defect." (Doc. 15, ¶ 149). Further, Plaintiffs aver that Honda began receiving complaints regarding the Class Vehicles in early 2023 and continues to receive them today, both directly and through the National Highway Traffic Safety Administration. (Doc. 15, ¶ 150). Despite the complaints, Plaintiffs allege that "Honda refuses to repair or replace the Rear Windshield Defect under [the Warranty] when given a reasonable opportunity to do so" and "has refused to repair or replace the Plaintiffs' rear windshields under Honda's warranty." (Doc. 15, ¶ 145).

In January 2024, following the initiation of this lawsuit, Honda issued the following statement in response to reports of rear windshields spontaneously shattering due to the Rear Windshield Defect:

Our investigation has revealed that during the assembly process for some vehicles, the sealer used to secure the rear glass may come into contact with the heating elements of the defroster, leading to a hot spot and weakening of the glass over time as the defroster is used.

Honda will be initiating a voluntary product update campaign related to this issue and is working to secure the needed replacement parts as soon as possible. We estimate that this campaign will begin in April or May 2024. In the interim, any vehicle owner who experiences this type of rear glass breakage is invited to contact

their nearest authorized dealer or Honda customer service (800-999-1009) to arrange a potential repair. Note that glass breakage due to external causes (impacts, etc.) is not covered by Honda's limited warranty but may be covered by a vehicle owner's insurance policy.

(Doc. 15, ¶¶ 4, 8).

On July 17, 2024, Honda issued a service bulletin, instructing Honda dealers and service personnel on how to "inspect the rear glass and repair if necessary, and how to process reimbursement requests for customers who already paid to have the rear glass replaced." (Doc. 47, at 2). On September 13, 2024, Honda issued a revised bulletin, which included "additional instructions for disposing of the rear windshield glass." (Doc. 47, at 3). After issuing the revised bulletin, Honda also mailed letters to registered owners of Class Vehicles that may have been affected by the Rear Windshield Defect, notifying them of the defect and "advising them to call any authorized Honda dealer to have their vehicle inspected and, if necessary, repaired for free." (Doc. 47, at 3).

Plaintiffs contend that, despite the January 2024 statement, July 2024 bulletin, September 2024 revised bulletin, and letters to customers, "Honda has not issued a voluntary recall to repair the defect, has not otherwise agreed to replace all defective rear windshields regardless of whether they have cracked to date, nor has it offered guaranteed compensation to consumers for out-of-pocket repair costs incurred repairing the rear windshield, which Honda consistently refuses to cover under its warranty." (Doc. 15, ¶ 147; Doc. 48, at 3). Further, Plaintiffs allege that Honda failed to disclose any and all defects related to the Class Vehicle to both owners and authorized dealerships, even after receiving complaints. (Doc. 15, ¶ 153; Doc. 48, at 2). As a result of the Rear Windshield Defect, Plaintiffs allege that they and proposed class members were deprived of the benefit of their bargain, exposed to safety risks,

and forced to expend money on repairs, as well as that "the value of the Class Vehicles has diminished." (Doc. 15, ¶¶ 154, 157; Doc. 48, at 3).

Plaintiffs filed the amended complaint on February 22, 2024. (Doc. 15). Therein, Plaintiffs allege the following eighteen causes of action against Honda:

1. Breach of Implied and Express Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* ("First Cause of Action") (Doc. 15, ¶¶ 167-74);

2. Unjust Enrichment ("Second Cause of Action") (Doc. 15, ¶¶ 175-82);

3. Breach of Implied Warranty of Merchantability pursuant to Song-Beverly Consumer Warranty Act – Cal. Civ. Code §§ 1792 and 1791.1, *et seq.* (Plaintiffs Cabral and Fairbanks on behalf of the California Class) ("Third Cause of Action") (Doc. 15, ¶¶ 183-91);

4. Breach of Express Warranty pursuant to Cal. Comm. Code § 2313 (Plaintiffs Cabral and Fairbanks on behalf of the California Class) ("Fourth Cause of Action") (Doc. 15, ¶¶ 192-201);

5. Breach of Express Warranty pursuant to Song-Beverly Consumer Warranty Act – Cal. Civ. Code §§ 1793 and 1791.2, *et seq.* (Plaintiffs Cabral and Fairbanks on behalf of the California Class) ("Fifth Cause of Action") (Doc. 15, ¶¶ 202-215);

6. Breach of Implied Warranty of Merchantability pursuant to Ga. Code Ann. § 11-2-314 (Plaintiff Barnes on behalf of the Georgia Class) ("Sixth Cause of Action") (Doc. 15, ¶¶ 216-24);

7. Breach of Express Warranty pursuant to Ga. Code Ann. § 11-2-313 (Plaintiff Barnes on behalf of the Georgia Class) ("Seventh Cause of Action") (Doc. 15, ¶¶ 225-34)

8. Breach of Implied Warranty of Merchantability pursuant to M.G.L. 106 § 2A-314 (Plaintiff Ojo on behalf of the Massachusetts Class) ("Eighth Cause of Action") (Doc. 15, ¶¶ 235-43);

9. Breach of Express Warranty pursuant to M.G.L. 106 § 2A-314 (Plaintiff Ojo on behalf of the Massachusetts Class) ("Ninth Cause of Action") (Doc. 15, ¶¶ 244-53);

10. Violation of M.G.L. 93A § 2, *et seq.* (Plaintiff Ojo on behalf of the Massachusetts Class) ("Tenth Cause of Action") (Doc. 15, ¶¶ 254-61);

6

11. Breach of Express Warranty pursuant to N.Y. UCC § 2-313 (Plaintiff Stewart on behalf of the New York Class) ("Eleventh Cause of Action") (Doc. 15, ¶¶ 262-71);

12. Breach of Implied Warranty of Merchantability pursuant to 13 Pa. C.S. § 2A212 (Plaintiff Fry on behalf of the Pennsylvania Class) ("Twelfth Cause of Action") (Doc. 15, ¶¶ 272-80);

13. Breach of Express Warranty pursuant to 13 Pa. C.S. § 2A210 (Plaintiff Fry on behalf of the Pennsylvania Class) ("Thirteenth Cause of Action") (Doc. 15, ¶¶ 281-90);

14. Breach of Implied Warranty of Merchantability pursuant to Tex. Bus. & Com. Code § 2.314 (Plaintiff McClain on behalf of the Texas Class) ("Fourteenth Cause of Action") (Doc. 15, ¶¶ 291-99);

15. Breach of Express Warranty pursuant to Tex. Bus. & Com. Code § 2.313 (Plaintiff McClain on behalf of the Texas Class) ("Fifteenth Cause of Action") (Doc. 15, ¶¶ 300-09);

16. Violation of the Texas Deceptive Practices Act, Tex. Bus. & Com. Code § 17.41, *et seq.* (Plaintiff Ojo on behalf of the Massachusetts Class) ("Sixteenth Cause of Action") (Doc. 15, ¶¶ 310-23)[2];

17. Breach of Implied Warranty of Merchantability pursuant to N.J.S.A. § 12A:2-314 (Plaintiff Einhorn on behalf of the New Jersey Class) ("Seventeenth Cause of Action") (Doc. 15, ¶¶ 324-32);

18. Breach of Express Warranty pursuant to N.J.S.A. § 12A:2-313 (Plaintiff Einhorn on behalf of the New Jersey Class) ("Eighteenth Cause of Action") (Doc. 15, ¶¶ 333-42).

On March 31, 2024, Honda filed a motion to dismiss the amended complaint, as well as a brief in support. (Doc. 17; Doc. 18). On April 18, 2024, Plaintiffs filed a brief in opposition to Honda's motion to dismiss. (Doc. 24). Honda filed its reply brief on May 7, 2024. (Doc. 25). On January 27, 2025, Honda filed a supplemental reply in support of its motion to dismiss

---

[2] The amended complaint described the Sixteenth Cause of Action as being brought by Plaintiff Ojo on behalf of the Massachusetts Class. However, the content of this cause of action alleges harm to Plaintiff McClain and Texas class members. (Doc. 15, ¶¶ 310-23). Given that Plaintiffs allege violation of a Texas statute, the Court assumes instead that Plaintiff McClain intended to bring this cause of action on behalf of the Texas class.

(Doc. 47), and on February 10, 2025, Plaintiffs filed a response in opposition to Honda's supplemental reply. (Doc. 48). Accordingly, the motions to dismiss have been fully briefed and are ripe for disposition.

## II.    LEGAL STANDARDS

### A.    MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Electronics Inc. v. United States*, 220 F. 3d 169, 176 (3d Cir. 2000). In a facial challenge under Rule 12(b)(1), a defendant argues that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *D.G. v. Somerset Hills School Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008). In response to the defense's facial challenge of subject-matter jurisdiction, the Court "must consider the allegations of the complaint as true." *Mortensen v. First Fed. Savings & Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977). In a factual challenge under Rule 12(b)(1), "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. "Evidence outside the pleadings [may be examined] to determine . . . jurisdiction." *Gould Electronics Inc.*, 220 F. 3d at 178. "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litigation*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994). "Rule 12(b)(1) motions may be filed at any time and

8

repeatedly, if the movants assert new arguments warranting [the court's] attention." *Fahnsestock v. Reeder*, 223 F. Supp. 2d 618, 621 (E.D. Pa. 2002).

In order for a Court to have subject-matter jurisdiction over a presented issue, the plaintiff must establish either diversity of citizenship or a federal question at hand. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015).

> "The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions 'between ... citizens of different States' where the amount in controversy exceeds $75,000." For over two hundred years, the statute has been understood as requiring "complete diversity between all plaintiffs and all defendants," even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, "no plaintiff [may] be a citizen of the same state as any defendant."

*Lincoln Ben. Life Co.,* 800 F.3d at 104.

B.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

A Federal Court may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the laws of the state in which the court sits. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) (citation omitted). The forum state in this instance is Pennsylvania, and the applicable long arm statute is codified at 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b). This statute permits courts in Pennsylvania to exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b). Thus, this Court may properly exercise jurisdiction over Defendants so long as it does not violate their due process rights. *See Mellon Bank*, 960 F.2d at 1221.

With respect to this constitutional inquiry, the "Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the

forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 299-300 (3d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Kehm Oil*, 537 F.3d at 299-300 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)). As such, personal jurisdiction under the Due Process Clause depends upon "the relationship among the defendant[s], the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977).

There are two types of personal jurisdiction over non-resident defendants—general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction may be asserted when a non-resident defendant has maintained "systematic and continuous contacts with the forum state." *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 (1984)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.") (citing *Int'l Shoe Co.*, 326 U.S. at 317). When subject to the general jurisdiction of a state, "that [defendant] can be called to answer any claim against [it], regardless of whether the subject matter of the cause of action has any connection to the forum." *Mellon Bank*, 960 F.2d at 1221. Thus, general jurisdiction requires that the defendant's contacts with the forum state are "of the sort that approximate physical presence." *William Rosenstein & Sons Co. v. BBI Produce, Inc.*, 123 F. Supp. 2d 268, 274 (M.D. Pa. 2000) (quoting *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,

10

223 F.3d 1082, 1086 (9th Cir. 2000), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)).

Pursuant to Pennsylvania's long-arm statute, this Court may exercise specific personal jurisdiction over a foreign defendant that "contract[s] to supply services or things in this Commonwealth." 42 Pa.C.S.A. § 5322(a)(2); s*ee Merced v. Gemstar Grp., Inc.*, No. CIV.A. 10-3054, 2015 WL 1182860, at *4 (E.D. Pa. Mar. 13, 2015). "Specific jurisdiction exists when the claim arises from or relates to [the defendant's] conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414–15 n.9). To determine whether it has specific jurisdiction over a defendant, the Court must engage in a three-part inquiry. *O'Connor*, 496 F.3d at 317. First, the Court must consider whether the defendants "purposefully directed [their] activities" at the forum state. *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros,* 466 U.S. at 414). Third, if the prior requirements are met, "[the Court] may consider additional factors to ensure that exercising jurisdiction would be consistent with notions of '"fair play and substantial justice."' *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 476).

C.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch*

11

*v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed

in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

D. AVERMENTS OF FRAUD UNDER FED. R. CIV. P. 9(B)

Rule 9(b) of the Federal Rules of Civil Procedure provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff must plead the circumstances of the alleged fraud with particularity in order to put defendants on notice of the claims against them, provide an opportunity for defendants to protect their reputations, and reduce the number of frivolous suits. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Pursuant to Rule 9(b), a plaintiff claiming fraud must specify "the who, what, when, where, and how of the events at issue." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (quoting *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016); *In re Rockefeller Ctr. Props., Inc. Sec. Litig*, 311 F.3d at 217). "Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d at 216 (quoting *In re Nice Sys., Ltd. Secs. Litig.*, 135 F. Supp. 2d 551, 577 (D.N.J.

13

2001)); *Animal Sci. Prod., Inc. v. China Nat. Metals & Minerals Import & Export Corp.*, 596 F. Supp. 2d 842, 878 (D.N.J. 2008).

### III.   DISCUSSION

Honda moves to dismiss Plaintiffs' amended complaint pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure. (Doc. 17). First, Honda avers that the Court lacks subject matter jurisdiction over this action because Honda's voluntary product update campaign, service bulletins, and customer letters render Plaintiffs' claims not justiciable. (Doc. 18, at 5; Doc. 47, at 3). Honda also contends that the Court lacks personal jurisdiction with respect to the claims of the seven non-Pennsylvanian named Plaintiffs. (Doc. 18, at 9). Honda then contends that Plaintiffs have not adequately alleged fraud-based claims because they have not satisfied Rule 9(b)'s heightened pleading standard. (Doc. 24, at 15). Next, Honda avers that Plaintiffs Ojo, Stewart, McClain, and Einhorn fail to state express warranty claims because they have not adequately alleged their vehicle was covered by a warranty at the time the Rear Windshield Defect occurred. (Doc. 18, at 17). Finally, Honda argues that Plaintiffs Barnes, Stewart, and Einhorn fail to state implied warranty claims because they lack direct contractual privity with Honda. (Doc. 18, at 19). The Court will address each argument in turn.[3]

A.   PLAINTIFFS STATE A JUSTICIABLE CLAIM.

Honda moves to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(1) on the basis of mootness, contending that their voluntary product update campaign, as outlined in

---

[3] The Court notes that Honda also asserts that Plaintiffs fail to state a claim under the Magnuson-Moss Warranty Act because the amended complaint does not name one hundred plaintiffs. (Doc. 18, at 16). However, Plaintiffs voluntarily withdrew their Magnuson-Moss Warranty Act claim in their brief in opposition. (Doc. 24, at 6 n.1).

their press statement, services bulletins, and customer letters, resolves the alleged defect and renders Plaintiffs' claims not justiciable. (Doc. 18, at 6; Doc. 47, at 3). Honda reasons that it is "clearly committed to fixing Plaintiffs' rear windshields at no charge, or alternatively, to reimbursing them if they already had to have their windshield replaced." (Doc. 25, at 3; *see* Doc. 47). Plaintiffs counter that despite Honda's voluntary product update, Honda has not issued a voluntary recall, has not agreed to replace all defective windshields, including those that have not cracked, and has not offered guaranteed compensation for out-of-pocket repair costs incurred by consumers after Honda refused to cover repairs under the Warranty. (Doc. 15, ¶¶ 147, 155; Doc. 48, at 1-2). Plaintiffs further aver that their demand for monetary damages, in addition to equitable damages, precludes Honda's voluntary product update campaign from providing complete relief. (Doc. 24, at 4-5; Doc. 48, at 2-3).

A court lacks subject matter jurisdiction over a controversy that has been rendered moot. *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007). There are two categories of mootness: Article III mootness and prudential mootness. *Sierra Club v. U.S. Army Corps of Eng'rs*, 277 F. App'x 170, 172 (3d Cir. 2008). Article III mootness limits judicial authority to the existence of a live "case or controversy." *Rendell*, 484 F.3d at 240; *Sierra Club*, 277 F. App'x at 172. Prudential mootness is a doctrine under which courts exercise discretion to decline declaratory or injunctive relief where a case or controversy is so attenuated that such relief would not be prudent. *Sierra Club*, 277 F. App'x at 172 (citing *Chamber of Commerce v. U.S. Dept. of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)). Honda asserts that Plaintiff's claims are prudentially moot. (Doc. 18, at 6; Doc. 47, at 3). The central question in determining whether a claim is prudentially moot is whether the plaintiff will have complete relief if the case is dismissed. *Sierra Club*, 277 F. App'x at 172–73 ("The central question in a prudential

mootness analysis is 'whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'") (internal quotations omitted); *see also Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. 1996) ("If developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.").

While the prudential mootness doctrine grants courts discretion to dismiss equitable claims, it does not grant courts discretion to dismiss legal claims. *Davis v. BMW of N. Am., LLC*, No. 19-CV-19650, 2022 WL 3646571, at *3 (D.N.J. Aug. 23, 2022) (citing *Cohen v. Subaru of Am., Inc.*, No. 12–844, 2022 WL 721307, at *36 (D.N.J. Mar. 10, 2022)). "Courts have routinely declined to apply this doctrine where plaintiffs seek not just equitable relief, but legal relief that exceeds what defendants were offering through a recall." *Davis*, 2022 WL 3646571, at *3; *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 681 (E.D. Pa. 2011) (rejecting the argument that a vehicle recall rendered a claim moot where the court could grant a "partial remedy," including monetary damages); *Hickman v. Subaru of Am., Inc.*, No. 1:21-CV-02100, 2022 WL 11021043, at *5 (D.N.J. Oct. 19, 2022) ("[A]pplication of the prudential mootness doctrine, even in the context of a facial attack, is not appropriate where . . . [p]laintiffs clearly allege diminution in value for their vehicles, which is a separate request for relief."). To hold otherwise "would be to dismiss the matter without giving Plaintiffs a chance to seek complete relief." *Hickman*, 2022 WL 11021043, at *5 (internal citation omitted).

Plaintiffs seek "actual damages, incidental and consequential damages, punitive damages, and/or other form[s] of monetary relief provided by law," in addition to equitable relief. (Doc. 15, at 80-81). According to Plaintiffs, this relief will reimburse them for the

16

diminution in value economic damages to compensate for overpaying for defective vehicles, in addition to reimbursement for out-of-pocket expenses and defect-free rear windshields. (Doc. 48, at 1). Courts have denied application of the prudential mootness doctrine where the plaintiff seeks legal remedies in addition to equitable remedies. *Davis*, 2022 WL 3646571, at *3 (rejecting the prudential mootness argument where plaintiff "allege[d] sufficient facts to support his claims for diminution in value [] and reimbursement for out-of-pocket expenses"); *Martin,* 765 F. Supp. 2d at 681 (finding same); *Patlan v. BMW of N. Am, LLC*, No. 18-CV-09546, 2024 WL 1328012, at *6 (D.N.J. Mar. 28, 2024) (finding same); *Hickman*, 2022 WL 11021043, at *5 (finding same), *see Jasinski v. Kia Am., Inc.*, No. 25-cv-1234, 2025 WL 3047883, at *4 (E.D. Pa. Oct. 31, 2025) ("In the context of a recall, '[c]ourts have routinely declined to apply this doctrine where plaintiffs seek not just equitable relief, but legal relief that exceeds what defendants were offering through a recall.'") (internal citations omitted). Because Plaintiffs seek both legal and equitable remedies, even if Honda acts fully under its voluntary product update, Plaintiffs will still not have complete relief. Plaintiffs seek further relief through the Court for their overpayment and the diminished value of the Class Vehicles at the time of sale or lease. (Doc. 15, at 81; Doc. 48, at 2). Therefore, Honda's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is **DENIED**.

    B.  THE COURT HAS PERSONAL JURISDICTION OVER HONDA.

Honda alleges that the Court lacks personal jurisdiction over it with respect to the claims of the seven non-Pennsylvanian named Plaintiffs. (Doc. 18, at 6). Honda moves to dismiss these claims under Fed. R. Civ. P. 12(b)(2) for the following reasons: (1) the claims have no relation to Pennsylvania, (2) Honda is not headquartered in Pennsylvania, and (3) Honda did not "consent" to general jurisdiction in Pennsylvania by registering to do business

there. (Doc. 18, at 9-10). While the first two contentions are undisputed, Plaintiffs counter that the Court has "general personal jurisdiction over Honda based on Pennsylvania's consent-by-registration statute[]" because Honda "registered to do business in Pennsylvania and established an office there to receive service of process." (Doc. 15, at ¶ 29; Doc. 24, at 11).

"[A] District Court typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing Fed. R. Civ. P. 4(k)(1)(A)). Under Pennsylvania's long-arm statute, the Court may exercise jurisdiction over non-resident defendants "to the fullest extent allowed under the Constitution of the United States," based "on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b).

The parties agree that Honda is not "at home" in Pennsylvania because it is neither headquartered nor incorporated there. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holding that a corporation is "at home" for purposes of general jurisdiction only in its place of incorporation and principal place of business); *see also Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 447 (E.D. Pa. 2023) (holding that a Massachusetts corporation is not subject to general jurisdiction because it is not "at home" in Pennsylvania). Notwithstanding this rule, "Pennsylvania expressly permits its courts to exercise 'general personal jurisdiction' over registered foreign corporations [], and the Supreme Court has explained that a foreign corporation consents to this general personal jurisdiction by complying with Pennsylvania's registration requirements." *Vonbergen,* 705 F. Supp. 3d at 447-48 (citing *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134-35 (2023)).

In *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023), the Supreme Court upheld 42 Pa. Cons. Stat. § 5301(a)(2)(i), Pennsylvania's consent-by-registration statute, as constitutional under the Due Process Clause of the Fourteenth Amendment. 600 U.S. at 134 ("Pennsylvania law is explicit that 'qualification as a foreign corporation' shall permit state courts to 'exercise general personal jurisdiction' over a registered foreign corporation, just as they can over domestic corporations."). In doing so, "[t]he Supreme Court held that [the] defendant consented to the general jurisdiction of [Pennsylvania] over claims against it when it registered to do business as a foreign corporation and had appointed an agent to receive service of process in the Commonwealth." *Angelillo v. Facebook*, No. 4:23-CV-1078, 2024 WL 4529564, at *5 (M.D. Pa. Oct. 18, 2024), *aff'd*, No. 24-3022, 2025 WL 1189822 (3d Cir. Apr. 24, 2025) (citing *Mallory*, 600 U.S. at 134-35).

Thus, in Pennsylvania, "personal jurisdiction may rest on a defendant's consent, independent of the 'at home' analysis for general jurisdiction." *Jasinski*, 2025 WL 3047883, at *6; *see also Monge v. Univ. of Pennsylvania*, No. CV 22-2942, 2023 WL 4237078, at *3 (E.D. Pa. June 28, 2023) ("Where a foreign corporation has consented to suit in the forum state as a function of registering to do business in that state, the exercise of general jurisdiction is proper"). "Consent is not a judicially created fiction – it is an 'express waiver of the personal jurisdiction requirement' that is fully enforceable when given in compliance with state law." *Jasinski*, 2025 WL 3047883, at *6 (quoting *Mallory*, 600 U.S. at 134-35). Because Honda has registered to do business and has a registered agent in Pennsylvania, it has consented to personal jurisdiction. *Jasinski*, 2025 WL 3047883, at *6 ("Defendant's registration to do business in Pennsylvania, coupled with its appointment of a registered agent, satisfies § 5301 and independently establishes personal jurisdiction.").

Further, the Court rejects Honda's argument that, per Justice Alito's concurring opinion in *Mallory*, Pennsylvania's consent-by-registration statute violates the Dormant Commerce Clause doctrine. 600 U.S. at 150 (Alito, J., concurring in part and concurring in the judgment). The Court notes that concurrences do not constitute binding precedent. *Maryland v. Wilson*, 519 U.S. 408, 413 (1997); *see Jasinski*, 2025 WL 3047883, at *6 (rejecting defendant's argument that "Pennsylvania's statutory framework violates the Dormant Commerce Clause to the extent that it establishes personal jurisdiction based on registration to do business"). Honda's motion to dismiss the seven non-Pennsylvanians' claims under Rule 12(b)(2) for lack of personal jurisdiction is **DENIED**.

C.  PLAINTIFFS DO NOT BRING FRAUD-BASED CLAIMS.

Honda next contends that Plaintiffs fail to adequately allege their fraud-based claims because they have not satisfied the heightened pleading standard of Fed. R. Civ. P. 9(b). (Doc. 18, at 15). Plaintiffs counter that they do not raise any fraud-based claims. (Doc. 24, at 13). In its reply brief, Honda responds that Plaintiffs' claims for unjust enrichment and violations of Massachusetts General Law, M.G.L 93A § 2 ("Chapter 93A"), allege fraudulent activity and therefore must be pled with sufficient particularity under Rule 9(b). (Doc. 25, at 9-10). The Court will address Honda's arguments as to Plaintiffs' Second and Tenth Causes of Action, which address the unjust enrichment and Chapter 93A claims, respectively.

**1. Unjust Enrichment Claim**

To state a claim for unjust enrichment, "a plaintiff must allege (1) that the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances in which it would be

inequitable to do so without paying for the benefit."[4] *In re Rutter's Inc. Data Sec. Breach Litig.,* 511 F. Supp. 3d 514, 537 (M.D. Pa. 2021) (citation omitted). Typically, unjust enrichment need only be pled under the liberal pleading standard of Fed. R. Civ. P. (8)(a)(2).[5] *Maniscalco*

---

[4] In their Second Cause of Action, Plaintiffs allege unjust enrichment on behalf of the proposed nationwide class or in the alternative the proposed California, Georgia, Massachusetts, New Jersey, New York, Pennsylvania, and Texas classes. (Doc. 15, at 57). Unjust enrichment laws do not vary in any substantive manner from state to state. *Snyder v. Farnam Cos., Inc.,* 792 F. Supp. 2d 712, 723 (D.N.J. 2011); *In re Actiq Sales and Mktg. Pracs. Litig.,* 790 F. Supp. 2d 313, 322 (E.D. Pa. 2001) (collecting cases); *see e.g. Ridgeline Cap. Partners, LLC v. MidCap Fin. Servs., LLC,* 340 F. Supp. 3d 1364, 1372 (N.D. Ga. 2018) (citations omitted) ("To state a claim for unjust enrichment a plaintiff must 'show that (1) a benefit was provided, (2) compensation for that benefit was not received, and (3) the failure to compensate renders the transaction unjust.'"); *Riganian v. LiveRamp Holdings, Inc.,* 791 F. Supp. 3d 1075, 1094 (N.D. Ca. 2025) (citations omitted) ("Regardless of whether the claim is labelled unjust enrichment or restitution, a plaintiff must allege the same two elements: 'receipt of a benefit and unjust retention of the benefit at the expense of another.'"); *Infinity Fluids Corp. v. General Dynamics Land Sys., Inc.,* 210 F. Supp. 3d 294, 309 (D. Mass. 2016) ("To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value."); *Dzielak v. Whirlpool Corp.,* 26 F. Supp. 3d 304, 330 (D.N.J. 2014) (citations omitted) ("Under New Jersey law, to state a claim for unjust enrichment, 'a plaintiff must allege that (1) at plaintiffs expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it.'"); *Cooper v. Anheuser-Busch, LLC,* 553 F. Supp. 3d 83, 115 (S.D.N.Y 2021) (citations omitted) ("The basic elements of an unjust enrichment claim in New York require proof that (1) [the] defendant was enriched, (2) at [the] plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what [the] plaintiff is seeking to recover."); *Digital Drilling Data Sys., LLC v. Petrolink Servs., Inc.,* 965 F.3d 365, 383-84 (5th Cir. 2020) (citations omitted) (Under Texas law, "[a] party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."). Since no actual conflict exists, the Court need not engage in a choice of law analysis, and Pennsylvania law will be applied to all Plaintiffs' unjust enrichment claims at this stage. *See On Air Ent. Corp. v. Nat'l Indem. Co.,* 210 F.3d 146, 149 (3d Cir. 2000) (finding that courts shall avoid engaging in choice of law analysis where parties cannot show the difference between applicable laws and there is no actual conflict); *see also In re Actiq Sales and Mktg. Pracs. Litig.,* 790 F. Supp. 2d 313, 322 (E.D. Pa. 2001).

[5] Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There

*(footnote continued on next page)*

*v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) ("[T]he Court notes that an unjust enrichment claim need not be pled with the same specificity as a claim sounding in fraud."); *see also In re Rutter's*, 511 F. Supp. 3d at 538 (declining to dismiss an unjust enrichment claim where plaintiffs plausibly alleged unjust enrichment on a theory that plaintiffs did not receive part of what they bargained for and that it would be unjust for the defendant to retain such benefit).

Notwithstanding, any claim that sounds in fraud, even where it is not a specific element of the cause of action, must plead the circumstances underlying the alleged fraud with particularity under Fed. R. Civ. P. 9(b). *In re Westinghouse Sec. Litig.,* 90 F.3d 696, 717 (3d Cir. 1996); *Travelers Indem. Co. v. Cephalon*, Inc., 620 F. App'x 82, 86 (3d Cir. 2015). An unjust enrichment claim sounds in fraud when the plaintiff's theory alleges that the defendant knew of the alleged defect and failed to disclose it. *See Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402, 414-15 (E.D. Pa. 2012) (dismissing unjust enrichment claim for failure to plead with particularity where the plaintiff's theory rested on a claim that defendant knew of the defect and failed to disclose it to consumers).

Honda contends that "Plaintiffs' unjust enrichment claim is based on a nondisclosure theory." (Doc. 25, at 9). The Court disagrees. Plaintiffs allege that (1) they conferred a benefit upon Honda by purchasing or leasing the Class Vehicles; (2) "Honda appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members, who, without knowledge of the Rear Windshield Defect, paid a higher price for their vehicles which actually had lower values" due to the Rear Windshield Defect and who,

---

is no requirement that the pleading be specific nor probable. *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (citing *Phillips v. Cnty. Of Allegheny*, 515 F.3D 224, at 233-34 (3d Cir. 2008)).

had they been aware, would not have purchased or leased the Class Vehicles; and (3) "[i]t would be inequitable and unjust for Honda to retain these wrongfully obtained profits." (Doc. 15, ¶¶ 176-78).

Plaintiffs' unjust enrichment theory does not rest on the contention that Honda knew of the Rear Windshield Defect and failed to disclose it. *See Osness,* 868 F. Supp. 2d at 414-15. Rather, Plaintiffs allege that it would be inequitable for Honda to retain the full benefit of the purchased Class Vehicles because the Rear Windshield Defect diminished the value of the vehicles. (Doc. 15, ¶¶ 176-78). Because this claim does not sound in fraud, Plaintiffs have sufficiently pleaded unjust enrichment. Honda's motion to dismiss Plaintiffs' Second Cause of Action under Rule 9(b) is **DENIED**.

### 2. Chapter 93A Claim

Chapter 93A of the Massachusetts General Law prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L 93A § 2(a). "To establish liability under [Chapter 93A], the plaintiff must prove: (i) that the defendant engaged in an act or practice that was deceptive or unfair; (ii) that the act occurred primarily and substantially in Massachusetts; and (iii) and that the act caused a loss of property or money." *Nutrition Mgmt. v. Harborside Healthcare Corp.*, No. CIV.A. 01-CV-0902, 2004 WL 764809, at *6 (E.D. Pa. Mar. 19, 2004) (citing M.G.L.A. 93A § 11). "Conduct is 'unfair' under Chapter 93A if it (1) falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; (2) is 'immoral, unethical, oppressive, or unscrupulous'; and (3) causes 'substantial injury to consumers.' " *In re Vanguard Chester Funds Litig.*, No. CV 22-955, 2023 WL 8091999, at *16 (E.D. Pa. Nov. 20, 2023) (internal quotations omitted).

"[T]o the extent that a Chapter 93A claim does not involve fraud, the claim is not subject to a heightened pleading requirement." *Canfield v. FCA US LLC*, No. CV 17-1789-MN-SRF, 2019 WL 133402, at *15 (D. Del. Jan. 8, 2019), *report and recommendation adopted*, No. CV 17-1789 (MN), 2019 WL 1089798 (D. Del. Mar. 8, 2019) (citations omitted). This is because "the definition of an actionable 'unfair or deceptive act or practice' goes far beyond the scope of the common law action for fraud and deceit." *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975) (quoting *United States Retail Credit Ass'n Inc. v. Fed. Trade Comm'n*, 300 F.2d 212, 221 (4th Cir. 1962)). Absent involvement of fraud, a plaintiff may adequately plead a violation of Chapter 93A under a Rule 8(a)(2) standard. *Canfield*, 2019 WL 133402 at *15 (holding that plaintiffs adequately pleaded a Chapter 93A claim under a Rule 8 standard by "pleading the alleged defect, [the defendant's] knowledge of the defect, and [the defendant's] concealment of this information"); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 904 (E.D. Pa. 2012) ("[N]o allegations of fraudulent conduct must be pled in order to sufficiently allege a [Chapter 93A] claim."). Further, courts are reluctant to dismiss Chapter 93A claims at the pleading stage. *In re Vanguard,* 2023 WL 8091999, at *16 ("[W]e are reluctant at the pleadings stage — and without the benefit of discovery — to adopt [defendants'] unfairness argument. Unfairness is a circumstantial inquiry under Massachusetts law.").

In Plaintiffs' Tenth Cause of Action, they allege that "Honda's sale and lease of the defective Class Vehicles and failure to repair the Defect constitute an unfair or deceptive practice in violation of [Chapter 93A]." (Doc. 15, ¶ 259). Plaintiffs adequately plead the existence of the Rear Windshield Defect. (Doc. 15, ¶ 3, 143). Further, Plaintiffs contend that Honda "is fully aware of the Rear Windshield Defect contained in the class vehicles" (Doc.

15, ¶ 153) and would have been made aware by March of 2023 at the latest, when the earliest recorded NHSTA complaints were filed. (Doc. 15, ¶ 150). Nevertheless, Plaintiffs allege that Honda failed to disclose the Rear Windshield Defect after learning of it, despite having "the ability to notify Class Vehicle owners about the Rear Windshield Defect directly and via its authorized dealerships at the time of sale and thereafter." (Doc. 15, ¶ 153). Because Plaintiffs plead the alleged defect, Honda's knowledge of the Rear Windshield Defect, and Honda's failure to notify interested parties, Plaintiffs have adequately pleaded their Chapter 93A claim. Therefore, Honda's motion to dismiss Plaintiffs' Tenth Cause of Action under Rule 9(b) is **DENIED**.

D. PLAINTIFFS OJO, STEWART, MCCLAIN, AND EINHORN DO NOT STATE CLAIMS FOR BREACH OF EXPRESS WARRANTY.

Next, Honda contends that Plaintiffs Ojo, Stewart, McClain, and Einhorn's express warranty claims must be dismissed because they fail to adequately allege that their vehicles were covered by a warranty when presented for repair. (Doc. 18, at 17-18). Honda reasons that because Plaintiffs Ojo, Stewart, McClain, and Einhorn allege facts only relating to the time limitation and not the mileage on their vehicles when the Rear Windshield Defect occurred and repair was sought, they fail to allege sufficient facts supporting their breach of express warranty claims. (Doc. 18, at 18). Honda further avers that because the remaining Plaintiffs have alleged facts relating to both time and mileage conditions, "the only reasonable inference is the mileage information is not helpful to [Plaintiffs'] claims." (Doc. 18, at 18-19). Plaintiffs Ojo, Stewart, McClain, and Einhorn counter that they "explicitly plead their rear windshields shattered when the vehicles were still covered by Honda's warranty." (Doc. 24, at 13-14; Doc. 15, ¶¶ 79, 85-86, 92, 98-101, 107, 113-117, 126, 132-135). Plaintiffs contend

that "[a]t this stage the Court must draw all reasonable inferences in Plaintiffs' favor, not Honda's." (Doc. 24, at 14).

In order to state a claim for breach of express warranty, a plaintiff must allege all of the following: "(1) that the defendant made an affirmation of fact or description of its goods; (2) that the statement formed part of the basis of the bargain between the parties; and (3) that the product failed to conform with the affirmation or description." *In re Shop-Vac Mktg. & Sales Pracs. Litig.*, 964 F. Supp. 2d 355, 362 (M.D. Pa. 2013) (citing U.C.C. § 2–313). Both parties agree that the Warranty "promised to 'repair or replace any part that is defective in material or workmanship under normal use' without charge within three years or 36,000 in service, whichever occurs first." (Doc. 15, ¶¶ 38, 49, 60, 71, 82, 95, 110, 129; Doc. 18, at 17; Doc. 24, at 13). While "breach of express warranty claims need not be pleaded with particularity under Rule 9(b) . . . Rule 8(a)(2) requires that Plaintiffs provide additional factual details to remove the vagueness and ambiguity" from their claims. *In re Shop-Vac Mktg. & Sales Pracs. Litig,* 964 F. Supp. 2d at 363-64. Where an express warranty for a vehicle is limited in duration of both time and miles, courts within this Circuit have held that class action plaintiffs fail to allege sufficient facts establishing that their vehicles remained under the warranty at the time of the defect when they fail to allege the mileage of the vehicles. *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 254 (D.N.J. 2020) (dismissing plaintiffs' breach of express warranty claims where the express warranty was limited in duration by both months and miles, "whichever occurred first," and plaintiffs sufficiently alleged a timeline but failed to allege mileage at the time the defect occurred); *see also Certain Underwriters at Lloyd's of Lond. v. U-Line Corp.*, No. 13-3203, 2013 WL 5503672, at *5-*6 (D.N.J. Oct. 1, 2023) (dismissing

plaintiff's breach of express warranty claims where plaintiffs failed to articulate with some specificity how the warranty was breached).

Because Honda's New Vehicle Limited Warranty was limited by both time and mileage, Plaintiffs Ojo, Stewart, McClain, and Einhorn fail to sufficiently allege facts supporting the defect occurred within the coverage period by alleging only time and failing to allege mileage. (Doc. 15, at 67-71, 74-76, 79-80). Honda's motion to dismiss Plaintiffs Ojo, Stewart, McClain, and Einhorn's Ninth, Eleventh, Fifteenth, and Eighteenth Causes of Action under Rule 12(b)(6) is **GRANTED**.

E. PLAINTIFF EINHORN'S BREACH OF IMPLIED WARRANTY CLAIM IS SUBSUMED BY THE NJPLA.

Finally, Honda moves to dismiss Plaintiffs Barnes, Stewart, and Einhorn's breach of implied warranty claims under Rule 12(b)(6) for failure to state a claim because they lacked direct privity with Honda, as is required under Georgia and New York law. (Doc. 18, at 19). Plaintiff responds that (1) Plaintiff Stewart does not bring an implied warranty of merchantability claim; (2) Plaintiff Einhorn brings an implied warranty of merchantability claim in New Jersey, which does not have a privity requirement—not in New York; and (3) privity is established as to Plaintiff Barnes' implied warranty claim under Georgia law. (Doc. 24, at 15). In its reply brief, Honda voluntarily withdrew its lack of privity arguments for Plaintiffs Stewart and Barnes but contends that Plaintiff Einhorn's implied warranty claim, while not barred by a lack of privity, is subsumed by the New Jersey Products Liability Act ("NJPLA"). (Doc. 25, at 12). Plaintiffs do not respond to this argument. Thus, the Court will only address Honda's motion to dismiss as to the Seventeenth Cause of Action, Plaintiff Einhorn's claim for breach of implied warranty on behalf of New Jersey class members. (Doc. 15, ¶¶ 324-32).

Under the NJPLA,

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable, or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J. Stat. Ann. § 2A:58C-2.

The definitional section of the NJPLA defines "harm" as "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm . . . " N.J. Stat. Ann. § 2A:58C-1(b)(2). Further, "products liability" is defined as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." § 2A:58C-1(b)(3). Thus, courts have interpreted the NJPLA to provide "the sole basis of relief under New Jersey law available to consumers injured by a defective product." *Port Auth. of New York & New Jersey v. Arcadian Corp.*, 189 F.3d 305, 313 (3d Cir. 1999) (quoting *Repola v. Morbark Indus., Inc.,* 934 F.2d 483, 492 (3d Cir.1991)); *see Calender v. NVR Inc.*, 548 F. App'x 761, 764 (3d Cir. 2013) (nonprecedential) ("Except for claims for breach of an express warranty, all claims for harm caused by a product under New Jersey law, regardless of the theory underlying the claim, are governed by the [NJPLA]."). Thus, New Jersey law does not recognize an alleged breach of implied warranty as a separate and distinct claim. *Calender,* 548 F. App'x at 764 (citing *Port Auth. of New York & New Jersey,* 189 F.3d at 313).

Plaintiff Einhorn's implied warranty claim centers around the Rear Windshield Defect. (Doc. 15, ¶¶ 3, 143). Specifically, all Plaintiffs allege that "during the assembly process, the sealer used to secure the rear glass in the Class Vehicles comes into contact with the heating elements of the defroster, leading to a hot spot and weakening of the glass over time as the defroster is used, eventually causing the rear windshields to spontaneously shatter." (Doc. 15, ¶¶ 3, 143). This claim clearly relates to "the potential 'harm caused by a product.'" *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 818 (D.N.J. 2019) (quoting *Port Auth. of New York & New Jersey,*189 F.3d at 313). Therefore, Plaintiff Einhorn's claim for breach of implied warranty is subsumed by the NJPLA. *See Hindermyer,* 419 F. Supp. 3d at 819 (holding that plaintiff's implied warranty claims were subsumed by the NJPLA). Accordingly, Honda's motion to dismiss Plaintiff Einhorn's Seventeenth Cause of Action under Rule 12(b)(6) is **GRANTED**.

## IV.    LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Plaintiffs Ojo, Stewart, McClain, and Einhorn's breach of express warranty claims, Counts Nine, Eleven, Fifteen, and Eighteen can be cured with amendment by pleading facts that show with "some specificity" that Plaintiffs Ojo, Stewart, McClain, and Einhorn were within the New Vehicle Limited Warranty's time and mileage limit. *See Certain Underwriters at Lloyd's*

*of Lond.,* 2013 WL 5503672, at \*5-\*6; *see Ponzio,* 447 F. Supp. 3d at 254. However, Plaintiff Einhorn's claim for breach of implied warranty, Count Seventeen, cannot be cured with amendment because the claim is subsumed by the NJPLA. *See Hindermyer,* 419 F. Supp. 3d at 819. Where there is product liability, New Jersey law does not recognize a separate and distinct breach of implied warranty claim. *Calender,* 548 F. App'x at 764 (citing *Port Auth. of New York & New Jersey,* 189 F.3d at 313). Accordingly, Plaintiffs Ojo, Stewart, McClain, and Einhorn's breach of express warranty claims, Counts Nine, Eleven, Fifteen, and Eighteen, are **DISMISSED without prejudice**. (Doc. 15). Plaintiffs Ojo, Steward, McClain, and Einhorn are **GRANTED** 21 days to amend their breach of express warranty claims. Plaintiff Einhorn's breach of implied warranty claim, Count Seventeen, is **DISMISSED** with prejudice. (Doc. 15).

## V.    CONCLUSION

For the foregoing reasons, Honda's motion to dismiss is **GRANTED in part** and **DENIED in part**. Honda's motion to dismiss the amended complaint under Rule 12(b)(1) for lack of subject matter jurisdiction is **DENIED**. (Doc. 17). Honda's motion to dismiss the amended complaint under Rule 12(b)(2) for lack of personal jurisdiction is **DENIED**. (Doc. 17). Honda's motion to dismiss Plaintiffs' Second and Tenth Causes of Action under Rule 9(b) is **DENIED**. (Doc. 17). Honda's motion to dismiss Plaintiffs Ojo, Stewart, McClain, and Einhorn's Ninth, Eleventh, Fifteenth, and Eighteenth Causes of Action under Rule 12(b)(6) is **GRANTED**. (Doc. 17). Plaintiffs Ojo, Stewart, McClain, and Einhorn's Ninth, Eleventh, Fifteenth, and Eighteenth Causes of Action are **DISMISSED without prejudice**. (Doc. 15). Honda's motion to dismiss Plaintiffs Einhorn's Seventeenth Cause of Action under Rule

12(b)(6) is **GRANTED**. (Doc. 17). Plaintiff Einhorn's Seventeenth Cause of Action is **DISMISSED with prejudice.** (Doc. 15).

An appropriate Order follows.

Dated: March 23, 2026                                    *s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **United States District Judge**

31